**CAMDEN INDUSTRIES COMPANY, Inc.**

v.

**CARPENTERS LOCAL UNION NO. 1688, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, Gerald P. Archambault, Teodor Bryl and Antonio J. Demers.**

Civ. A. No. 2556.

United States District Court
D. New Hampshire.

May 18, 1965.

---

2. Ore.Const. art. I, § 12.

See also, D.C., 246 F.Supp. 259.

254

Booth, Wadleigh, Langdell, Starr & Peters, Ralph E. Langdell, Manchester, N. H., for plaintiff.

Edward J. McDermott, Hampton, N. H., Segal & Flamm, Arthur J. Flamm, Boston, Mass., for defendants.

CONNOR, District Judge.

## I. Plaintiff's Motion to Remand

Plaintiff is a Delaware corporation qualified to do business in New Hampshire and doing business in Manchester, New Hampshire, as Hermsdorf Fixture Mfg. Co., Inc. Defendant Carpenters Local Union No. 1688 is an unincorporated association. Defendants Archambault, Bryl and Demers are members of the Union. This suit was commenced by plaintiff in the Superior Court of New Hampshire on November 20, 1964. By its complaint, plaintiff sought to enjoin defendants from proceeding to arbitrate certain alleged grievances. On November 23, 1964, the Superior Court for Hillsborough County, per Laughlin, J., temporarily enjoined defendants from proceeding to arbitration, in an *ex parte* order. There matters apparently stood until January 4, 1965, when defendant Union served interrogatories upon plaintiff which inquired into the interstate character of plaintiff's business. On January 21, 1965, plaintiff advised the Union that it was indeed engaged in interstate commerce. Fourteen days later, on February 4, 1965, defendant Union filed its removal petition in this court.

Defendants removed the case to this court on the ground that the complaint stated a claim cognizable under 29 U.S.C. § 185 (also known as section 301 of the Labor Management Relations Act) in that it involved the arbitrability of an alleged grievance under a collective bar-

gaining agreement. Defendants filed an answer to the complaint and added a counterclaim whereby they seek an order compelling plaintiff to submit the alleged grievances to arbitration.

Plaintiff moved to remand the case to the Superior Court, challenging the timeliness of the removal petition and this court's jurisdiction of the subject matter.

### A. Timeliness of the Removal Petition

28 U.S.C. § 1446 prescribes the procedure for removal. Under section 1446 (b), a removal petition ordinarily must be filed within twenty days of receipt by the defendant of the initial pleading or within twenty days of service of a summons upon him, whichever period is the shorter. Clearly, defendants' petition was not filed within this twenty day period. But defendants claim their petition was timely under the second paragraph of section 1446(b). That paragraph reads as follows:

"If the case stated by the initial pleading is not removable, a petition for removal may be filed within twenty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."

Defendant Union contends that plaintiff's participation in interstate commerce was not ascertainable from its initial pleading and until such could be ascertained, the case was not removable. The Union asserts that plaintiff's informal answer to interrogatories, made on January 21, 1965, confirming participation in interstate commerce was the "paper" from which removability of this case could first be ascertained.

29 U.S.C. § 185(a) (section 301 of LMRA) recognizes a suit between a union and an employer if employer and union are "in an industry affecting commerce." It seems clear then, that participation by the parties in an industry affecting commerce, as defined by the LMRA, is a prerequisite to federal jurisdiction over the subject matter. 29 U.S.C. § 142(1) states that "[t]he term 'industry affecting commerce' means any industry or activity in commerce or in which a labor dispute would burden or obstruct commerce or tend to burden or obstruct commerce or the free flow of commerce." The initial complaint filed by plaintiff in the State court was bare of any indication that the parties were in an industry within this definition and, therefore, the Court concludes that the initial pleading did not state a removable case.

Plaintiff takes the position that regardless of what the initial pleading contained, defendants had actual knowledge that the parties fell within the statutory definition at the time the complaint was filed and, therefore, should not be entitled to the extended period for removal provided in the second paragraph of 28 U.S.C. § 1446(b). Though defendants may in fact have had such knowledge, the Court believes section 1446(b) is unambiguous in providing that the initial pleading itself is to govern, regardless of knowledge a defendant may have. Such a provision is salutary in that it eliminates the time and expense of a preliminary inquiry into the state of mind of a defendant where the issue is merely one of timeliness.

Defendants' interrogatories were obviously framed to elicit an indication that plaintiff was in an industry affecting commerce and plaintiff's informal answer to them must be deemed to have given such an indication. It follows that plaintiff's informal answer was the first "paper" from which it could be ascertained that this matter was removable. Accordingly, defendants' removal petition, filed within twenty days of receipt of plaintiff's informal answer to interrogatories, was timely.

### B. Jurisdiction Over the Removed Case

Plaintiff's motion to remand also challenges federal jurisdiction over this case.

Plaintiff accurately points out that its action in the State court was a proceeding to stay or prevent arbitration; plaintiff argues that such a proceeding is not "a suit for violation of a contract" between an employer and a union over which 29 U.S.C. § 185 confers original jurisdiction and that, therefore, this court has no removal jurisdiction under 28 U.S.C. § 1441(a). In effect, plaintiff contends that this court has no original jurisdiction over this matter, from which it follows that there can be no removal jurisdiction.

■ It has been settled ever since the Lincoln Mills case that 29 U.S.C. § 185 confers original jurisdiction on federal courts over actions to *compel* arbitration of labor contract disputes where one of the parties has refused to arbitrate. Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Less clear is whether federal courts have original jurisdiction over declaratory judgment actions or injunction suits to stay arbitration in advance of a formal refusal by a party to arbitrate. But the Court believes that the issues of fact and law would be identical regardless of whether the action were brought to stay or compel arbitration. In both types of action, the primary inquiry would be arbitrability of the dispute in the light of the arbitration provisions agreed to by the parties in their collective bargaining agreement.

The weight of authority favors original federal jurisdiction in actions the purpose of which is to stay arbitration. See cases collected in Black-Clawson Co., Paper Mach. Division v. International Association of Machinists, 313 F.2d 179, 181 (2nd Cir. 1962). Decisions so holding proceed on the theory that the more reasonable reading of 29 U.S.C. § 185 would include a proceeding by a party to determine whether his own conduct would be a violation of the labor contract if he refused to arbitrate. True it is that these decisions deal for the most part with declaratory judgment actions, but the Court is unable to discern any

meaningful difference between those cases and the instant case where plaintiff seeks a judicial determination of arbitrability through an injunction suit. Had plaintiff brought this proceeding in this court originally, the Court would have few doubts about its jurisdiction.

The question here is removal jurisdiction and plaintiff has cited two cases which specifically deny federal jurisdiction over removed actions to stay arbitration: Wamsutta Mills v. Pollock, 180 F.Supp. 826 (S.D.N.Y.1960); Hall v. Sperry Gyroscope Co., 183 F.Supp. 891 (S.D.N.Y.1960). However, these decisions proceeded on the theory that an action to stay arbitration was not a "suit for violation of a labor contract" within the meaning of 29 U.S.C. § 185, a theory that the Court rejects in favor of the better reasoned opinions holding otherwise. In fact, the "narrow view" of the Wamsutta and Hall cases was specifically disapproved in the Second Circuit's opinion in the Black-Clawson case, supra, thereby reducing or eliminating any authority Wamsutta and Hall might have supplied.

■ Plaintiff has not advanced any other grounds for lack of removal jurisdiction other than failure of 29 U.S.C. § 185 to provide original jurisdiction. Since the Court concludes that section 185 does confer original jurisdiction, and since there appears to be no other barrier to removal, the Court concludes that plaintiff's motion to remand should be denied.

*II. Motion by Defendants for Summary Judgment*

Defendants accompanied their answer with a counterclaim for specific enforcement of the arbitration provisions embodied in the collective bargaining agreement entered by plaintiff and the Union. Now defendants, asserting that no genuine issue of fact remains, seek summary judgment in their favor under Rule 56 of the Federal Rules of Civil Procedure, and an order requiring plaintiff to submit the alleged grievances to arbitration.

Upon the pleadings and other materials on file, together with matters brought out at the hearing on this motion, the Court finds the following facts to be undisputed.

1. On May 6, 1963, Hermsdorf Fixture Mfg. Company, a division of Camden Industries Company, Incorporated (plaintiff), entered into a collective bargaining agreement (Agreement) with Carpenters Local Union 1688, United Brotherhood of Carpenters and Joiners of America (defendant Union). This Agreement is still in effect.

The Agreement's preamble states: "the term 'employee' * * * shall mean all employees of the company engaged in the construction, finishing and installation of fixtures." Defendants Gerald P. Archambault, Teodor Bryl and Antonio J. Demers are employees of plaintiff.

Article IV, Section 1 provides:

"The minimum rate of pay for journeymen in the shop, in the mill room and while traveling to and from an outside installation shall be Two and 40/100 Dollars ($2.40) per hour."

This section also provides for payment of apprentices at lower rates, depending on length of service. Section 2 of Article IV required a raise in hourly rates of ten cents per hour effective January 6, 1964.

Most of plaintiff's employees receive pay equal to or exceeding the minimum journeyman's rate. Some, however, do not. Defendants Archambault, Bryl and Demers are paid less than the rate provided for journeymen in the Agreement.

2. Article XIII of the Agreement provides for a four-step grievance procedure. In October 1964, defendants Archambault, Bryl and Demers filed identical complaints worded as follows:

"In accordance with Article XIII of the existing agreement, I am hereby grieving the failure of the Company to pay me at the rate of $2.50 per hour as provided by the Agreement. I am requesting that the Company commence paying me at said rate and make me whole for the lost earnings."

The alleged grievances stated in these complaints were processed through the initial three steps of the grievance procedure, without any adjustment being reached. By letter of November 4, 1964, plaintiff stated its willingness to arbitrate the question whether Archambault, Bryl and Demers were qualified as "journeymen" within the commonly accepted definition of such term, but refused to arbitrate any question which might involve change in the language or meaning of the Agreement.

Defendants asserted that the Agreement requires that all employees in the bargaining unit be classified as either journeymen or apprentices and that such employees be compensated at rates set forth in the Agreement for their classification.

3. Article XIII of the Agreement provides, as the fourth step of the grievance procedure, for arbitration of any difference or dispute between the parties which is not satisfactorily adjusted by the initial three steps of the grievance procedure. The Article also states:

"No question involving changes in the terms and provisions of this agreement shall be subject to the foregoing grievance procedure or to arbitration hereunder."

It remains for the Court to determine whether, on the above facts, defendants are entitled to judgment as a matter of law on the claim and counterclaim.

 Federal law controls in arbitrability suits under 29 U.S.C. § 185. John Wiley and Sons, Inc. v. Livingston, 376 U.S. 543, 548, 84 S.Ct. 909, 11 L.Ed. 2d 898 (1964). And the Federal law respecting the role of the courts in deciding whether a dispute must be submitted to arbitration is reasonably clear. Whether or not a reluctant party is bound to arbitrate, as well as the issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the par-

258

ties. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed. 2d 462 (1962). Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. But the judicial inquiry under 29 U.S.C. § 185 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance. United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Accordingly, the merits of a particular grievance should not enter the Court's consideration. United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 568, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1964). Moreover, an order to arbitrate a particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that would bring the asserted dispute within its coverage. Doubts should be resolved in favor of coverage. United Steelworkers of America v. Warrior & Gulf Navigation Co., supra.

With these rules in mind, the Court turns to examine the arbitration provisions of the Agreement, together with the positions the parties have adopted with respect to those provisions and the dispute which exists between them.

The arbitration provisions agreed to by the parties may be summarized as requiring arbitration of any difference or dispute between the parties which has not been satisfactorily adjusted by the initial steps of the grievance procedure and which does not involve changes in the terms and provisions of the collective bargaining agreement. Though an arbitrator would thus be barred from considering any dispute the resolution of which would involve changes in the terms of the contract, the Court cannot say that an arbitrator would be prohibited from considering a dispute which would merely require him to interpret the scope and meaning of existing contract terms. And for reasons that follow, the Court cannot say with positive assurance that the disputes in this case could be resolved in defendants' favor only by changes in the terms of the contract, as distinct from mere interpretation.

Plaintiff contends that the Agreement provides minimum wage rates only for "journeymen and apprentices"; as to other types of employees, according to plaintiff, the contract is silent. Plaintiff believes that the only question an arbitrator could properly consider, under the terms of the arbitration provisions summarized above, is whether Archambault, Bryl and Demers fall within the classification of "journeyman" according to the commonly accepted meaning of that term. Plaintiff argues that if the alleged grievances were submitted on any other basis, they would involve changes in the wage terms of the Agreement, since in plaintiff's view, minimum wages are specified *only* for journeymen and apprentices as these terms are commonly used but for no other type of employee. Plaintiff points out that its offer to arbitrate whether Archambault, Bryl and Demers are "journeymen" has apparently been refused by the Union. Accordingly, it is plaintiff's position that arbitration of these alleged grievances would involve changes in the wage terms, would go beyond the agreed scope of arbitration and would, therefore, not be arbitrable.

Defendant Union contends that the wage classifications of the Agreement are inclusive, rather than exclusive. In the Union's view, *all* employees of plaintiff must receive either journeyman or apprentice wage rates; the Agreement is not silent as to wage rates of certain employees but rather encompasses all persons engaged in the construction, finishing and installation of fixtures for plaintiff. Accordingly, it is the Union's position that arbitration of' the alleged grievances would not involve a *change* in the wage terms of the Agreement but a mere interpretation of the scope of the existing terms. Therefore, the Union asserts that arbitration of the alleged

grievances would fall within the scope of the arbitration provisions to which plaintiff agreed, and that plaintiff should be compelled to do as it agreed; *i. e.*, arbitrate.

From the foregoing, it appears that the scope and meaning of the Agreement's wage terms are at the heart of these disputes. If the wage terms can only be given the narrow construction advocated by plaintiff, then indeed these disputes would not be arbitrable, since there would be no room for interpretation. But if the wage terms can be classed as ambiguous, then the alleged grievances would be arbitrable, since their meaning would be open to interpretation.

Upon analysis of the wage terms of the Agreement, the Court cannot say with positive assurance that they are unambiguous. Since the Court cannot say the wage terms are unambiguous, it follows that the Court cannot say that these disputes do not admit of resolution through interpretation of the wage terms; and as has been noted above, an arbitrator is not prohibited by the Agreement's arbitration provisions from interpreting existing contract terms.

Therefore, under the mandate of the Warrior & Gulf opinion, supra, the Court believes it should not deny an order to arbitrate in this case. On the undisputed facts as they appear above, defendant is entitled to judgment as a matter of law.

This result should in no way be construed to influence the arbitrator who may pass on these alleged grievances, or limit the scope of his inquiry. In the light of industry custom and usage, the arbitrator might find that the wage terms of the Agreement are unambiguous and leave no room for interpretation; hence he might decide he is barred from considering the merits of these alleged grievances under the arbitration provisions of the Agreement. Or, finding some ambiguity in the wage terms, the arbitrator might resolve it in favor of the plaintiff. The Court's function here has been a severely restricted one: to determine whether, under any possible view of the arbitration provisions, an arbitrator might consider these disputes.

ORDER

Plaintiff's motion to remand to the Superior Court of New Hampshire is denied. Defendants' motion for summary judgment is granted and judgment shall be entered in their favor. The temporary injunction restraining defendants from proceeding to arbitration is hereby dissolved. The parties are ordered to proceed to arbitration of the alleged grievances, in compliance with Article XIII of their collective bargaining agreement, within thirty days of this order.