**COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO, Plaintiff-Appellant,**

v.

**NEW YORK TELEPHONE COMPANY, Defendant-Appellee.**

**No. 153, Docket 27926.**

United States Court of Appeals Second Circuit.

Submitted Nov. 18, 1963.

Decided Jan. 29, 1964.

Cooper, Ostrin, DeVarco & Ackerman, New York City, Kane & Koons, Washington, D. C., (Herman E. Cooper, George A. Nicolau, Ronald J. Brooks, New York City, of counsel), for plaintiff-appellant.

Proskauer, Rose, Goetz & Mendelsohn and G. Wallace Bates, New York City (Edward Silver, George G. Gallantz, William P. Witman, Martin J. Oppenheimer, New York City, of counsel), for defendant-appellee.

Before MEDINA, WATERMAN and MARSHALL, Circuit Judges.

WATERMAN, Circuit Judge:

Plaintiff, Communications Workers of America, AFL–CIO, brought suit below to compel defendant, New York Telephone Company, to arbitrate grievances caused by the temporary promotion of certain employees without regard to a seniority roster. Both parties agreed that no genuine issues of fact were involved in the case and both moved for summary judgment. The United States District Court for the Southern District of New York, Tyler, J., in a written opinion reported at 209 F.Supp. 389, granted defendant company's motion. He dismissed plaintiff's action on the ground that the dispute was one expressly excluded from arbitration by the parties' collective bargaining agreement. Plaintiff union has appealed. We affirm.

The dispute sought to be arbitrated involves the proper criteria to be used by defendant company in deciding which employees to promote. It is the union's position that all promotions, whether temporary or permanent, must be based on seniority if all other relevant qualities of employee candidates are substantially equal. The company disagrees, maintaining that the parties' collective bargaining agreement requires that consideration of the seniority of employees is applicable to permanent promotions only, and, though requested by the union to do so, refused to arbitrate the dispute.

Resolution of the differences between petitioner and the company depends upon the proper construction of two sections of the parties' collective bargaining agreement.

The section of the contract which provoked the disagreement over the proper method of handling promotions is Section 9.08 of Article 9, which states:

"9.08. In selecting employees for promotion to occupational classifications within the bargaining unit, seniority shall govern if other necessary qualifications are substantially equal. In no event shall any grievance or dispute arising out of this Section 9.08 be subject to the arbitration provisions of this Agreement."

The bargaining agreement's basic arbitration provision, which the plaintiff union maintains requires arbitration of the dispute, is Section 12.01 of Article 12. That section provides as follows:

"12.01. Either the Union or the Company may arbitrate a grievance regarding the true intent and meaning of a provision of this Agreement, or a grievance involving a claim referable to arbitration as provided in Articles 7, 8, 10 and 15, provided in all cases that the grievance has been processed in accordance with the provisions of Article 11 and has not been adjusted, and that written notice of intention to arbitrate is given to the other party within thirty (30) calendar days after the review in Step 4 of Article 11 has been com-

pleted. It is understood that the right to require arbitration does not extend to any matters other than those expressly set forth in this Article."

Familiar indeed are the general principles we are required to apply in determining whether the defendant company should be required to arbitrate this dispute. These principles were set forth by the Supreme Court in the well known cases of United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), and United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L. Ed.2d 1424 (1960). This court has had occasion to discuss and apply them several times. Carey v. General Electric Co., 315 F.2d 499 (2 Cir.), petition for cert. filed, 31 U.S.L.Week 3400 (U.S. May 2, 1963) (No. 1070, 1962 Term; renumbered 114, 1963 Term); Livingston v. John Wiley & Sons, Inc., 313 F.2d 52 (2 Cir.), cert. granted, 373 U.S. 908, 83 S. Ct. 1300, 10 L.Ed.2d 411 (1963); Procter & Gamble Independent Union v. Procter & Gamble Mfg. Co., 298 F.2d 644 (2 Cir. 1962).

■ According to the Steelworkers cases, though a party may be held to arbitrate only those disputes contracted to be arbitrated, a very strong presumption exists in favor of the arbitrability of a disagreement over the meaning of a labor contract. A grievance or dispute must be regarded as arbitrable "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." United Steelworkers of America v. Warrior & Gulf Nav. Co., supra, 363 U.S. at 582–583, 80 S.Ct. at 1353, 4 L.Ed.2d 1409. Parties to a labor agreement containing an arbitration clause may, of course, exclude certain types of disputes from arbitration. But an exclusionary clause, to be effective, must be clear and unambiguous.

■ It is difficult to imagine a clearer or more direct exclusionary clause than the one in Section 9.08 above set forth. It expressly provides that "in no event" shall "*any* grievance or dispute" arising out of the section be subject to the contract's arbitration provisions. (Emphasis supplied.) We believe these words convey a clear and unambiguous directive that no Section 9.08 disputes of any kind are arbitrable.

The union, nevertheless, seeks to saddle the exclusionary clause of Section 9.08 with ambiguity, by arguing that it only definitely forecloses review by an arbitrator of the company's estimate of the comparative abilities of employees eligible for promotion. According to the union, the clause does not clearly prohibit arbitral inquiry into the true meaning of the terms used in the section. Thus, the union's argument amounts to pointing out two types of disputes which might arise under Section 9.08, and then contending that the section's exclusionary clause clearly covers but one of them.

One obvious difficulty with this argument is that Section 9.08 states that arbitration proceedings shall not be invoked with regard to "*any* grievance or dispute" arising under the section. (Emphasis supplied.) But there is another reason, relating to the only way in which the contract's arbitration clause could cover Section 9.08 disputes absent an exclusionary clause, for rejecting the argument. Section 12.01, above quoted, the basic arbitration provision, is so drawn as to compel arbitration in two categories of cases: (1) those involving claims referable to arbitration as provided in Articles 7, 8, 10 and 15 of the contract; and (2) those involving disputes as to the true intent and meaning of any provision in the contract.

For the exclusionary clause of Section 9.08 to have any meaning at all, it must be regarded as referring to that part of Section 12.01 which, except for that clause, would extend to disputes under Section 9.08. Since Section 9.08 is in Article 9 (and not Article 7, 8, 10 or 15), the only way disputes under it could be

arbitrable would be through application of Section 12.01's "true intent and meaning" clause. Therefore, the exclusionary clause of Section 9.08, unless we hold it to be devoid of any meaning whatever, must be viewed as referring to and foreclosing disputes as to the meaning of the terms used in that section. And as this is precisely the sort of dispute the union argues is not covered by Section 9.08's exclusionary clause we find no merit in its argument.

We are not unmindful of the "federal policy of promoting industrial peace and stability, especially with reference to arbitration procedures set up in collective bargaining agreements." Livingston v. John Wiley & Sons, Inc., supra, 313 F.2d at 56. The advantages of arbitration are obvious and compelling indeed, and absent a legitimate contractual restriction prohibiting it, the most desirable method of resolving this dispute would no doubt be through its submission to arbitration. But, if the strong presumption in favor of arbitrability established in the Steelworkers cases is not to be made irrebuttable, we cannot close our eyes to the plain meaning of the words used in this contract. The union also argues that if the company is not compelled to arbitrate this grievance it will be able to exercise almost unlimited discretion over the operation of matters arising under an entire section of the agreement. This argument does not impress. We cannot bring ourselves to accept this invitation to ignore the plain meaning of the Section 9.08 exclusionary clause, and to find ambiguity where none exists, by indulging ourselves in speculation as to what types of disputes a union might be likely to require an employer to settle by arbitration. The union concedes it intended to give the company unlimited discretion with respect to certain facets of Section 9.08's operation. If, at the bargaining table, the union's true intent was to reserve a different sort of Section 9.08 question for an arbitrator, it should not have consented to the incorporation into that section of an exclusionary clause so broad and sweeping.

Affirmed.

MEDINA, Circuit Judge (dissenting):

I dissent. For centuries philosophers and others have been puzzled and sometimes even amused at the proclivities of lawyers and judges to weave a web of confusion around some perfectly simple proposition, and in the process come out with a result that defies common sense. This case is a perfect illustration.

The collective bargaining agreement contains a clause providing that in selecting employees for "promotion" seniority shall govern; and there is to be no arbitration of grievances or disputes arising out of this particular clause. Along comes the employer who says "promotion" means only "permanent promotion." Had it been to the economic advantage of the employer to do so, I suppose it could have taken the directly contrary position, to the effect that "promotion" means only "temporary promotion."

As the employees have no other way of procuring a decision by a court on the point, the dispute is processed as a grievance and the Union comes into a federal court asking for arbitration.

It is hornbook law that it is the function of the court in these arbitration cases first to construe the meaning of the agreement. All we have to do, and what in my judgment we should do, is to say that, as we construe the contract, "promotion" means "promotion," and that includes a "temporary promotion" as well as a "permanent promotion." Thus there is nothing to arbitrate and it turns out that the Union was right from the beginning.