John STRAUSS, as President, or Robert J. Sullivan, as Secretary-Treasurer of Bakery Drivers Union Local 802, International Brotherhood of Teamsters, Appellant,

v.

SILVERCUP BAKERS, INC., Appellee.

No. 174, Docket 30069.

United States Court of Appeals
Second Circuit.

Argued Oct. 21, 1965.

Decided Dec. 9, 1965.

Samuel J. Cohen, New York City (Bruce H. Simon, Stanley M. Berman, and Cohen & Weiss, New York City, on the brief), for appellant.

Thomas W. Gleason, New York City (Gleason & Miller, New York City on the brief), for appellee.

Before WATERMAN, MOORE and FRIENDLY, Circuit Judges.

MOORE, Circuit Judge:

This is an appeal by Bakery Drivers Union Local 802 (the Union) from an order directing the Union to proceed to arbitration in its dispute with Silvercup Bakers, Inc. (Silvercup).

Members of the Union deliver Silvercup's products. Since 1951, delivery employees have been on a "Swing Operation," under which deliveries are made six days a week by employees, none of whom work more than five days a week. To make this possible, the Company employs a number of "swingmen" to fill in for their regular "Route Salesmen" on their days off. On August 6, 1965, the Company wrote to the Union stating that it proposed to change over to a system of delivery known in the trade as the "Drop-Out Day System," under which the Company would deliver only five days a week, making no deliveries on Wednesday. Adoption of this system would result in the probable loss of jobs for some 55 swingmen now employed by Silvercup.

The Union objected on the grounds that, under the collective bargaining agreement then in force, no changes in methods of delivery could be made without negotiation and mutual agreement. Silvercup requested arbitration; the Union declined on the grounds that the subject was one expressly excluded from arbitration by the collective bargaining agreement. Silvercup then brought suit to compel arbitration.

The relevant portions of the collective bargaining agreement, the interpretation of which is at the heart of this case, are as follows:

*Article 19(a).* There shall be arbitration for all disputes which may arise between the parties hereto, except that the arbitrator shall have no power to alter, amend, revoke, or suspend any of the provisions of this Agreement.

*Article 24.* The Union and the Employer recognize the changes that have occurred in retail food stores, i. e., their replacement at an accelerated rate by the large corporate and cooperative food chains, and accordingly it may be necessary to recognize the appropriateness of considering changes in delivery, merchandising and compensation methods.

In view of this, the Employer may at any time request a meeting with the Union, for the purpose of negotiating and mutually agreeing on different commission payments or other methods of compensation or delivery methods which may be desirable under such changed conditions.

In the event of such request, the parties will meet promptly for the purposes outlined above.

In the event the parties are unable to agree, the dispute shall not be subject to the Arbitration Procedure of this Agreement.

The district court granted its order to compel arbitration on two grounds: (1) that under the broad language of the arbitration clause, the question of arbitrability was for the arbitrator and not for the court; and (2) that in any case the exclusionary language in the last paragraph of Article 24 was not sufficiently specific for the court to rule that a switch to the drop-out day system was not a proper subject for arbitration.

▮ We do not find the language of Art. 19(a) broad enough to make arbitrability a question for the arbitrators in this case. The Supreme Court, although strongly favoring arbitration of labor disputes in its many recent decisions on the subject, has nevertheless maintained that "[t]he duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty." John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 547, 84 S. Ct. 909, 913, 11 L.Ed.2d 898 (1964). The courts have the duty to determine whether the reluctant party has breached his promise to arbitrate, United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), unless the contract clearly manifests an intention that arbitrability should be decided by the arbitrator. See also Drake Bakeries, Inc. v. Local 50, American Bakery Workers, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962) in which the Supreme Court held that the question of arbitrability was for the courts, even though the arbitration clause covered "any act or conduct or relation between the parties." Id. at 257 n. 2, 82 S.Ct. at 1348. Moreover, the juxtaposition of an "all disputes" clause in a collective bargaining agreement with a clause excluding certain disputes from arbitration suggests that the parties intended to have questions concerning the scope of the exclusion decided in the first place not by the arbitrator, but by the courts.

▮ It is clear that a provision must be specific if it is to exclude a claim from arbitration, but it is not clear how specific the provision must be in order to have this effect. It is this area of uncertainty in the law that underlies the present appeal.

The Supreme Court in the Warrior & Gulf case, supra, held that a dispute over whether work could be subcontracted by the employer was a dispute "as to the meaning and application of the provisions" of the collective bargaining agreement, within the arbitration clause of that agreement, and was not excluded from arbitration by a clause excluding from arbitration matters "strictly a function of management." The Court pointed to the federal policy underlying support of labor arbitration as a means of preserving industrial stability, and said:

An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

\* \* \* \* \* \*

\* \* \* In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad. Since any attempt by a court to infer such a purpose necessarily comprehends the merits, the court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator, 363 U.S. at 582–583, 584–585, 80 S.Ct. at 1354.

The Union contends that the exclusionary clause of Article 24 was intended to cover a change from delivery six days

a week to delivery five days a week, since that is a change in a delivery method. Silvercup maintains that the only changes in delivery methods contemplated by Article 24 were changes not in the number of employees or in the number of days of delivery under a given method of distribution, but a shift in the whole method of delivery: from use of deliverymen employed by Silvercup, to use of independent contractors as deliverymen; or to outright sales to distributors; or to the "drop delivery" system, under which the company would deliver its products to the distribution center of a supermarket chain for distribution to the various stores in that chain.

Neither construction of Article 24 is patently impossible or unreasonable. The case is not as clear-cut in one direction as Local 12298, Dist. 50, UMW v. Bridgeport Gas Co., 328 F.2d 381 (2d Cir. 1964), in which we held that a management functions clause providing that "the right to relieve employees from duty because of lack of work is vested exclusively in the Company" did not unambiguously exclude from arbitration disputes concerning the existence of job vacancies. In that case, the lack of a clear-cut intent to exclude the dispute from arbitration was so plain that we were able to reverse a judgment for the party resisting arbitration with instructions to grant the petition to compel arbitration.

Nor is the case one in which we can say that the exclusionary clause unambiguously covers the type of dispute sought to be arbitrated, as was true in Communications Workers v. New York Telephone Co., 327 F.2d 94 (2d Cir. 1964). In that case, the dispute concerned criteria for promotion, and the exclusionary clause provided that seniority shall govern promotion of employees if other qualifications are substantially equal, and that no dispute arising out of the section should be subject to the arbitration provisions of the collective bargaining agreement.

But the mere fact that neither of two proffered interpretations of an exclusionary clause, one of which would permit arbitration, the other of which would prevent it, is frivolous or unreasonable on its face, does not mean, as the trial court apparently believed, that the court must order the parties to proceed to arbitration. We believe that the trial court should have accepted proffered proof relevant to the intentions of the parties at the time they drafted their agreement. The duty to arbitrate being contractual in origin, the court must make an effort to construe the extent of that contractual duty, rather than force arbitration even of arbitrability upon parties who did not bind themselves to such a submission. Further inquiry may well enable the trial court to say with "positive assurance" that the exclusionary clause covers this dispute, so that the request for an order compelling arbitration should be denied. On the other hand, further inquiry may also indicate that the trial court cannot positively declare that the parties intended to exclude the dispute from arbitration—in which case, the trial court must issue an order directing the parties to proceed to arbitration.

We are aware of the danger that courts will become "entangled in the construction of the substantive provisions of a labor agreement * * * through the back door of interpreting the arbitration clause * * *." United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 585, 80 S.Ct. 1347, 1354, 4 L. Ed.2d 1409 (1960). We have accordingly refused to permit inquiries into bargaining history that would draw us into the merits of a labor dispute without shedding much light on the extent of the duty to arbitrate. In Local 12298, Dist. 50, UMW v. Bridgeport Gas Co., 328 F. 2d 381 (2d Cir. 1964), we did not allow an employer resisting arbitration to show that the union had failed in an attempt to cover the subject matter of the dispute in the collective bargaining agreement. But the inquiry here is directly connected with the extent of the duty to

arbitrate, and does not touch upon the merits of the dispute. The ultimate issue is whether the court can say with positive assurance that the exclusionary clause applies to the dispute sought to be arbitrated. We reverse and remand for an inquiry into the intention of the parties as to the scope of the exclusionary clause.

Reversed and remanded.