**INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO, and Auburn Electronics Local 967, International Association of Machinists and Aerospace Workers, AFL–CIO, Petitioners-Appellees,**

v.

**GENERAL ELECTRIC COMPANY, Respondent-Appellant.**

**No. 180, Docket 32399.**

United States Court of Appeals Second Circuit.

Argued Dec. 16, 1968.

Decided Jan. 27, 1969.

Tracy H. Ferguson, Syracuse, N. Y. (Bond, Schoeneck & King, Edwin M. Shultes, Robert W. Kopp, Anthony R. Pittarelli, Syracuse, N. Y., on the brief), for respondent-appellant.

Bernard Dunau, Washington, D. C. (Plato E. Papps, Louis Poulton, Washington, D. C., Bernard T. King, Blitman & King, Syracuse, N. Y., on the brief), for petitioners-appellees.

Before KAUFMAN, ANDERSON and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

We have here another case involving whether a dispute between parties to a collective bargaining agreement is arbitrable. General Electric Company ("Company") appeals from a decision of the United States District Court for the Northern District of New York, William H. Timbers, J.,[1] ordering arbitration of a grievance brought by petitioners International Association of Machinists and Aerospace Workers, AFL–CIO, and Auburn Electronics Local 967, International Association of Machinists and Aerospace Workers, AFL–CIO ("Union"). 282 F. Supp. 413 (N.D.N.Y.1968). For reasons set forth below, we affirm.

The facts are undisputed and relatively simple. On June 26, 1967, the Company announced that production at its plant in Auburn, New York, would be suspended for July 3, and that most employees should not report to work. On June 29, the Union filed a grievance, claiming a contract violation. After exhausting the grievance procedures, the Union in January 1968, invoking section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, filed a petition in the district court to compel arbitration under section 4 of the United States Arbitration Act, 9 U.S.C. § 4. The primary basis of the Union's grievance is that the Company violated Article IV, section 3, of the 1966–1969 labor agreement; that section requires the Company, before changing the "hours of work or working schedule of a substantial number of employees" to discuss the change with the Union and give one week's notice thereof. The Company's original response on the merits was that only a "temporary layoff" was involved; Article XII, section 1, of the contract appears to suggest that no notice is necessary as to such a layoff. There are other peripheral arguments in the controversy which need not be discussed in detail;[2] the issue before us is not whether the Company breached the agreement, but whether the dispute is arbitrable.

As to that, the Company claims that the district court erroneously interpreted

1. Chief Judge of the District of Connecticut, sitting by designation.

2. E. g., the Company claims that since the Union relied on section 1, rather than on section 3, of Article IV in first presenting its grievance, it cannot now base its claim on the latter.

Article XVI of the agreement, which deals with arbitration. The relevant portions of that Article require arbitration of an unsettled grievance, at the request of either party,

provided it involves,

   (a) the interpretation or application of any of the following provisions of this Agreement, except as otherwise specified:

   \*     \*     \*     \*     \*     \*

      Article IV, Working Hours, *except as to issues involving the Company's right to schedule shutdowns.* [Emphasis added.] [3]

According to the Company, the parties have thus excluded from arbitration all issues involving shutdowns; since a shutdown is involved here, that should end the case. The Union, however, argues that (1) the Company's action was not a shutdown because concededly the entire plant was not closed on July 3, and (2) even if there was a shutdown, the Company's violation of Article IV is nonetheless arbitrable. According to the Union, the effect of the exclusionary language of Article XVI quoted above is to make nonarbitrable only the Company's *right* to shut down if it decides that exigencies demand it. On this theory, the Company's decision to shut down the plant cannot be questioned in arbitration, but the consequences of the Company's action can be; e. g., did it violate other sections of the contract?

     ■ To resolve the issue of arbitrability, there is no need to rehearse the applicable law here at length; we have done so in the recent past. See, e. g., IUE v. General Electric Co., 407 F.2d 253 (2d Cir. 1968); ILA v. New York Shipping Ass'n, 403 F.2d 807 (2d Cir. 1968). It is enough to say that the authorities there quoted teach us that it is "national policy" to encourage arbitration of labor disputes, that doubts as to arbitrability should be "resolved in favor of coverage," that language excluding certain disputes from arbitration must be "clear and unambiguous" or "unmistakably clear," and that arbitration should be ordered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." This is an imposing litany for the Company to overcome. While the arbitration clause in the 1966–1969 agreement is not identical with the broad provisions contained in the now-familiar trilogy,[4] the language is spacious enough. Moreover, the exclusionary clause exhibits what counsel for the Union at oral argument called "calculated ambiguity" on at least two issues: (1) What does "shutdown" mean; e. g., is it partial or total, and if the former, how much of a "shutdown" is required to qualify as such; and (2) even if a "shutdown" is involved, does the exclusion from arbitration of the Company's "right to schedule shutdowns" also render non-arbitrable an alleged breach of other sections of the agreement caused by the Company's shutdown? We are by no means sure of the answers to these questions, and we certainly cannot say with the required "positive assurance" that the arbitration clause is not "susceptible" of the Union's construction. Accordingly, we think that under the controlling authorities the district court correctly ordered arbitration.

     ■ The Company argues that the district court erred by failing to decide whether a shutdown had occurred. As to this, Judge Timbers said:

     Aside from the belatedness of the company's asserted claim that its July 3 action constituted a shutdown, it is doubtful that it was a shutdown with-

---

3. There are also listed 18 other Articles, or sections thereof, including "Article XII, Reducing and Increasing Forces."

4. United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

in the meaning of the agreement; the company's answer of August 6 referred to "a one day temporary lack of work *in most areas of the Plant*" (emphasis added); most salaried employees worked; and some production departments were in full production. Even if the company's July 3 action could be construed as a shutdown, it also constituted a change in hours of work or working schedule with respect to which the exclusion clause does not relieve the company of the requirements of notification and discussion.

\*     \*     \*     \*     \*     \*

The Court has not overlooked the advisability of ordering a further hearing to take oral testimony \* \*. Such course in the instant case is believed to be neither necessary or appropriate. The arbitration clause clearly covers the asserted dispute \* \* \*.

It is true that the court technically made no explicit finding on whether there was a shutdown. But it clearly displayed its lack of enthusiasm for the Company's broad interpretation of the word and indicated its belief that what had occurred did not amount to a shutdown. This was made more emphatic by its later conclusion that "The arbitration clause clearly covers the asserted dispute." Finally, it flatly ruled that even if a shutdown had occurred, the Union's grievance was still arbitrable, a conclusion with which, as indicated, we agree. Under these circumstances, no error was committed.

Finally, the Company seeks reversal because the Union commenced its action by petition under section 4 of the United States Arbitration Act instead of by complaint under section 301 of the Labor Management Relations Act, and because the Union thereafter used the summary procedures of the Arbitration Act. The Company concedes that the procedure used would be appropriate under our holding in Signal-Stat Corp. v. Local 475, United Electrical Workers, 235 F.2d 298 (2d Cir. 1956), cert. denied, 354 U.S. 911, 77 S.Ct. 1293, 1 L.Ed.2d 1428 (1957), that the Arbitration Act ordinarily does apply to suits upon collective bargaining agreements, at least when the employees involved are not "actually in the transportation industries." [5] However, the Company claims that we must overrule Signal-Stat because of the later decisions of the Supreme Court in Textile Workers v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), and General Electric Co. v. Local 205, United Electrical Workers, 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028 (1957).

We do not agree that those decisions require reversal of *Signal-Stat*, since the majority opinion in each is silent on the basic issue here involved.[6] We note that the Courts of Appeals for the Third and Seventh Circuits agree with this view; after *Lincoln Mills*, they have each cited *Signal-Stat* with approval in finding the United States Arbitration Act applicable to actions based on section 301 of the Labor Management Relations Act. See Newark Stereotypers' Union v. Newark Morning Ledger Co., 397 F.2d 594, 596 n. 2 (3d Cir. 1968); Pietro Scalzitti Co. v. IUOE Local 150, 351 F.2d 576, 579–

---

5. 235 F.2d at 302. The court was construing the exclusionary clause of section 1 of the Act, 9 U.S.C. § 1:

   [N]othing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.

   The court also held that collective bargaining agreements are "contracts of employment." For a contrary view, see Local 205, United Electrical Workers v. General Elec. Co., 233 F.2d 85, 98–100 (1st Cir. 1956), aff'd on other grounds,

353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028 (1957); Cox, Grievance Arbitration in the Federal Courts, 67 Harv.L.Rev. 591, 593–97 (1954).

6. Mr. Justice Frankfurter, dissenting, regarded the majority opinions as implicitly rejecting "the availability of the Federal Arbitration Act to enforce arbitration clauses in collective-bargaining agreements." 353 U. S. at 466, 77 S.Ct. at 926; see Bickel & Wellington, Legislative Purpose and the Judicial Process: The Lincoln Mills Case, 71 Harv.L.Rev. 1, 35 n. 114 (1957).

580 (7th Cir. 1965); cf. Rhine v. Union Carbide Corp., 343 F.2d 12, 16 (6th Cir. 1965); Local 149, Technical Engineers v. General Electric Co., 250 F.2d 922, 927–929 (1st Cir. 1957), cert. denied, 356 U.S. 938, 78 S.Ct. 780, 2 L.Ed.2d 813 (1958). Contra, Lodge No. 506, IAM v. General Electric Co., 211 F.Supp. 654 (N.D.N.Y.1959). In this court, *Signal-Stat* has not been squarely overruled or, as to the issue raised here, even explicitly reconsidered; in fact, we have recognized without discussion the application of the Arbitration Act in labor cases,[7] although once or twice we have apparently assumed the contrary for purposes of discussion.[8]

It is now clear that section 301 of the Labor Management Relations Act itself authorizes enforcement of a promise to arbitrate contained in a collective bargaining agreement. Therefore, we are not impressed by the Company's argument that we should reverse because the proceeding was improperly commenced. The Union's petition invoked section 301, and we cannot believe that the district court should have dismissed the action under that section because the document first served upon the Company was labeled "petition" rather than "complaint." The argument, then, is reduced to whether use of the summary procedures of the Arbitration Act requires reversal and, presumably, a rerun of the dispute in the district court. However, as Judge Timbers emphasized,[9] the Company has neither shown nor alleged any prejudice other than its inability to delay the arbitration by insisting on the time periods applicable to plenary actions.[10] Under those circumstances, we decline the invitation to reconsider the holding of *Signal-Stat* that the Arbitration Act is applicable here. It is therefore unnecessary to decide whether, as the Union urges, the procedures of that act should, in any event, be applied as guiding analogy in formulating federal law.[11]

The order of the district court is affirmed.

7. See, e. g., Bridgeport Rolling Mills Co. v. Brown, 314 F.2d 885 (2d Cir.) (per curiam), cert. denied, 375 U.S. 821, 84 S.Ct. 58, 11 L.Ed.2d 55 (1963); Drake Bakeries, Inc. v. Local 50, Bakery Workers, 287 F.2d 155 (2d Cir.), rev'd, 294 F.2d 399 (2d Cir. 1961) (in banc), aff'd, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962).

8. See Engineers Ass'n v. Sperry Gyroscope Co., 251 F.2d 133, 135 (2d Cir. 1957), cert. denied, 356 U.S. 932, 78 S.Ct. 774, 2 L.Ed.2d 762 (1958); cf. Metal Prods. Workers Local 1645 v. Torrington Co., 358 F.2d 103, 106 (2d Cir. 1966).

9. The judge pointed out that:
The company's action of July 3, 1967 gave rise to the dispute. Six months later, after the grievance procedure had failed to resolve the dispute, the union on January 3, 1968 filed this Court its petition to compel arbitration. Five days later, on January 8, the company filed its answer and on the same date the Court held a hearing at which counsel were fully heard. At no time was a continuance of the hearing requested. At no time was testimony or other evidence offered which was not accepted by the Court. The only extensions of time requested—by both sides—were for the filing of briefs; all such extensions were granted, the briefs having been filed on February 14. The net result is that this entire proceeding in this Court has been concluded within approximately 2½ months from its commencement—a sharp contrast to the time schedule of a plenary action which "would produce the delay attendant upon judicial proceedings preliminary to arbitration." John Wiley & Sons v. Livingston, 376 U.S. 543, 548 [84 S.Ct. 909, 11 L.Ed.2d 898] (1964).

10. Cf. American Mach. & Foundry Co. v. UAW Local 116, 256 F.Supp. 161 (S.D.N.Y.1963), aff'd per curiam; United Automobile, Aerospace & Agricultural Workers of America v. American Machine and Foundry Co., 329 F.2d 147 (2d Cir. 1964); Carey v. General Elec. Co., 213 F.Supp. 276, 294 (S.D.N.Y.1962), aff'd, 315 F.2d 499 (2d Cir. 1963).

11. See Engineers Ass'n v. Sperry Gyroscope Co., 251 F.2d 133, 136 (2d Cir. 1957), cert. denied, 356 U.S. 932, 78 S.Ct. 774, 2 L.Ed.2d 762 (1958); Textile Workers v. American Thread Co., 113 F.Supp. 137, 142 (D.C.Mass.1953).