**COMMUNICATIONS WORKERS OF AMERICA, Appellant,**

**v.**

**SOUTHWESTERN BELL TELEPHONE COMPANY, Appellee.**

**No. 25760.**

United States Court of Appeals
Fifth Circuit.

July 15, 1969.

Robert C. Eckhardt, Washington, D. C., for appellant.

James M. Shatto, Jack Binton, Houston, Tex., for appellee.

Before THORNBERRY and SIMPSON, Circuit Judges, and CASSIBRY, District Judge.

CASSIBRY, District Judge:

This is a labor arbitration case. Southwestern Bell Telephone Company brought suit in the District Court to enjoin the Communications Workers of America from submitting a dispute to arbitration. Jurisdiction was premised upon § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185,[1] and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. The District Court found the collective bargaining agreement [2] to prohibit arbitration of this dispute and issued the injunction. We disagree with this conclusion and reverse.

This case arises from the involuntary retirement with pension of Mrs. Addell Wilson, a 52 year-old telephone operator who had worked for the Company for over 30 years. The retirement was effected in accordance with the Company's Employee Benefit Plan.[3] As Mrs. Wilson's collective bargaining representative, the Union protested her retirement, claiming that it violated her seniority rights under Article XIX of the collective agreement between the Company and the

---

1. "(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

2. This agreement comprises two contracts: (1) The 1960 Traffic Agreement, applying only to traffic unit employees; and (2) the 1960 Agreement of General Application, applying to members of the accounting, commercial plant, and traffic units. Except in the footnotes, no attempt will be made to differentiate between these two contracts.

3. Section 4(1) (b) of the Plan in relevant part provides:

"Any employee whose term of employment has been thirty years or more, or any * * * female employee who has reached the age of fifty years and whose term of employment has been twenty-five or more years may, if the case is approved by the Committee as appropriate for such treatment, be retired from active service and, upon such retirement, shall be granted a service pension."

The Plan was unilaterally promulgated by Southwestern Bell in 1913, more than 24 years before unionization of the Company's employees, and is administered by a committee of five persons appointed by the Company's Board of Directors.

Union.[4] To vindicate these rights, the Union sought to invoke the grievance procedure,[5] which comprises three steps of meetings with progressively higher levels of company management, followed by arbitration in certain specified cases when agreement is not reached.[6] Contending that Article VII of the collective agreement specifically precluded use of the grievance-arbitration procedure in this dispute, the Company refused to meet on the grievance.[7] The Union then filed a second grievance alleging that the Company's refusal to meet on the first grievance violated the grievance provisions of the collective bargaining contract.[8] This second grievance, after being processed through the grievance procedure without resolution, was submitted to an arbitrator who found that the Company's refusal had violated the contract. Following this determination, Southwestern Bell met with the Union on the grievance, but no agreement was reached and the Union invoked arbitration again. The Company responded by instituting this suit to enjoin arbitration, in which it reasserted that the dispute was not arbitrable under the express provision of Article VII.[9] The Union cross-claimed seeking to compel arbitration. The District Court denied the Union's motion for summary

4. 1960 Traffic Agreement, Art. XIX. Seniority.
   "Seniority shall be taken into account in the treatment of employees covered by this Agreement insofar as the conditions of the business and the abilities of the employees permit."

5. 1960 Traffic Agreement, Art. XX(b):
   "Any employee complaint (except those which contemplate treatment or proceedings inconsistent with the terms of a collective bargaining contract or agreement then in effect including proposals for the modification of, or addition to, any such contract or agreement) which is reduced to writing and delivered by a Union representative in accordance with (c) of this Article within 60 days of the action complained of shall be considered and handled as a formal grievance under (c) hereof."

6. Agreement of General Application, Art. V, § 1:
   "If, during the term of this Agreement * * * a difference shall occur, between the Union and the Management, and continue after all steps in the 'Formal Grievance' procedure * * * shall have been undertaken and completed, regarding,

   (a) the true intent and meaning of any specific provision or provisions thereof (except as such provision or provisions relate, either specifically or by effect, to prospective modifications or amendments of such agreements), or

   (b) the application of any provision or provisions to any employee or group of employees, and grievances arising from such application, or

   (c) the dismissal of any employee with more than three completed years' net credited service then in any such event, either the Union or the Management may submit the issue of any such matter to arbitration for final decision in accordance with the procedure hereinafter set forth."

7. Southwestern Bell relied upon Article VII of the 1960 Agreement of General Application to support its contention, that in disputes *involving* the Plan, only those dealing with the question of bad faith or discrimination in the reduction of benefits were subject to the grievance-arbitration procedure. Article VII provides:
   PENSIONS, DISABILITY BENEFITS, AND DEATH BENEFITS
   "During the term of this Agreement, no change may be made without the consent of the Union in the existing 'Plan for Employees' Pensions, Disability Benefits, and Death Benefits' which would reduce or diminish the benefits or privileges provided thereunder. Any claim that such benefits or privileges have been so diminished or reduced may be presented as a grievance and if not resolved by the parties under their grievance machinery may be submitted to arbitration pursuant to the provisions of Article V hereof but in any such case any decision or action of the Company shall be controlling unless shown to have been discriminatory or in bad faith and *only the question of bad faith or discrimination shall be subject to the grievance procedure or arbitration.*"
   (Emphasis added)

8. See note 5, *supra.*

9. See note 7, *supra.*

judgment and granted, *sua sponte,* summary judgment for the Company declaring the dispute not arbitrable and enjoining the Union from proceeding to arbitration. The Union appealed to this Court.

■ Arbitration of labor disputes is a matter of contract, not a matter of right. United Steelworkers of America v. Warrior and Gulf Navigation Company, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); Local Union No. 787, International Union of Electrical, Radio and Machine Workers, AFL–CIO v. Collins Radio Company, 317 F.2d 214 (5th Cir. 1963). Determination of the arbitrability of this dispute therefore depends upon whether the collective agreement between the Company and the Union requires arbitration. In deciding this question, the permissible scope of the judicial inquiry is narrowly circumscribed by the Steelworkers' trilogy. United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); United Steelworkers of America v. Warrior and Gulf Navigation Company, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed. 2d 1403 (1960). See also Lodge No. 12, District No. 37, International Association of Machinists v. Cameron Iron Works, Inc., 292 F.2d 112 (5th Cir. 1961). We are precluded from "weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim," United Steelworkers of America v. American Manufacturing Co., *supra,* 363 U.S. at 568, 80 S.Ct., at 1346, such questions being for the arbitrator alone to decide. Our examination is solely "confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract", United Steelworkers of America v. American Manufacturing Co., *supra,* and whether the parties "did agree to arbitrate the grievance * * *." United Steelworkers of America v. Warrior and Gulf Navigation Company, *supra,* 363 U.S. at 582, 80 S.Ct., at 1353.

■ Having made this limited inquiry, we conclude that this is a contractual dispute which the parties agreed to submit to arbitration. Compulsory retirement of employees upon attainment of a certain age and/or years of service to the Company doubtless threatens an employee's continued tenure of employment, a right arguably protected by the seniority provisions of the contract. The Union's claim that operation of the retirement provisions of the Company's Employee Benefit Plan infringes seniority rights protected by Article XIX of the collective agreement is therefore a "claim which on its face is governed by the contract", and which obviously raises questions regarding the interpretation and application of a contract provision, the standard enumerated in Article V for an arbitrable dispute. Thus this claim is appropriate for arbitration under the contract. See Taft Broadcasting Company v. Radio Broadcast Technicians Local Union No. 253 of the International Brotherhood of Electrical Workers, 298 F.2d 707 (5th Cir. 1962).

■ Of course, this determination is meant to have no reflection upon whether retirements pursuant to the Plan are in fact governed by the seniority provisions of the contract, and, if so, whether Mrs. Wilson's involuntary retirement violates these provisions. Such questions go to the merits of this dispute and are solely for the arbitrator to decide. See Oil, Chemical and Atomic Workers International Union v. Southern Union Gas Company, 379 F.2d 774 (5th Cir. 1967).

We necessarily reject Southwestern Bell's contention that Article VII precludes arbitration of this dispute. Article VII provides:

"During the term of this agreement, no change may be made without the consent of the Union in the existing 'Plan for Employees' Pensions, Disability Benefits, and Death Benefits' which

would reduce or diminish the benefits or privileges provided thereunder. Any claim that such benefits or privileges have been so diminished or reduced may be presented as a grievance and if not resolved by the parties under their grievance machinery may be submitted to arbitration pursuant to provisions of Article V hereof but in any such case any decision or action of the Company shall be controlling unless shown to have been discriminatory or in bad faith and only the question of bad faith or discrimination shall be subject to the grievance procedure or arbitration."

Prior to inclusion of Article VII in the collective agreement, administration of the Employee Benefit Plan in accordance with its terms and provisions was not enforceable by arbitration inasmuch as the Plan, which had been unilaterally promulgated by Southwestern Bell more than 24 years before the unionization of the Company's employees, had never been incorporated in the contract and thus made subject to the general arbitration clause. Unambiguous and clear on its face, this provision merely purports to say that heretofore any action by the Company reducing or diminishing benefits without the consent of the Union is a matter subject to the grievance and arbitration machinery where discrimination or bad faith is shown. No broader reading of the provision or its implications is possible without doing violence to the clear and precise language used by the parties to the contract. Thus we find no merit in the Company's argument that the Plan, heretofore a carefully guarded unilateral endeavor of the Company, is somehow incorporated in the contract by Article VII, thus making all its terms enforceable through arbitration, while at the same time this far-reaching expansion of the scope of arbitration, much less the contract, is then narrowed to encompass no more than a limited inquiry regarding the Company's good faith in the administration of but one aspect of the Plan—the level of benefits—and to exclude all disputes that so much as tangentially involve the Plan, as does this seniority dispute. Contractual language simply cannot be stretched this far.

■ Interpretation of contract language restricting the scope of arbitration is governed by the rigid standards established in the *Steelworkers'* cases. These require that "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail * * *", United Steelworkers of America v. Warrior and Gulf Navigation Company, *supra*, 363 U.S. at 585, 80 S.Ct., at 1354, and that an order prohibiting arbitration cannot be issued "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." United Steelworkers of America v. Warrior and Gulf Navigation Company, *supra*, 363 U.S. at 582–583, 80 S.Ct., at 1353. As summarized by the Second Circuit Court of Appeals in Proctor & Gamble Independent Union of Port Ivory, N. Y. v. Proctor & Gamble Manufacturing Company, 298 F.2d 644, 645–646 (1962):

"The nub of the matter is that under the broad and comprehensive standard labor arbitration clause every grievance is arbitrable, unless the provisions of the collective bargaining agreement concerning grievances and arbitration contain some clear and unambiguous clause of exclusion, or there is some other term of the agreement that indicates beyond peradventure of doubt that a grievance concerning a particular matter is not intended to be covered by the grievance and arbitration procedure set forth in the agreement. * * * *"

Lacking support in the contract, Southwestern Bell's interpretation of Article VII fails to meet these strict standards for finding an exclusion from arbitration.

■ We also reject Southwestern Bell's alternative argument that it is but a "subterfuge" to characterize the Union's claim as arising under the sen-

iority provisions of the contract, the claim actually being one under the Employee Benefit Plan, and thus non-arbitrable unless specifically designated in Article VII. Though the Plan and its application certainly are incidentally involved in this dispute, the Union's claim is not predicated upon any denial of rights provided under the Plan, but rather upon the alleged infringement of contract rights by its operation. Unquestionably, therefore, this is a *contractual* dispute appropriate for arbitration pursuant to the general arbitration clause.

As a final argument, Southwestern Bell contends that the question of the arbitrability of this dispute should not be determined without the benefit of evidence revealing the bargaining history surrounding the inclusion of Article VII in the contract. This history allegedly shows the parties' intention to exclude the Union's claim from arbitration. Relying upon two prior Fifth Circuit decisions, the District Court refused the proffer. We are in accord with this determination.

■■■ Though some disagreement exists among the circuits on the admissibility of evidence of bargaining history to show whether an issue was excluded from arbitration under a collective bargaining contract,[10] the rule in this circuit has been clear since the Supreme Court's opinion in United Steelworkers of America v. Warrior and Gulf Navigation Company, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed. 2d 1049 (1960), where the majority, faced with having to determine whether an exclusionary clause prevented arbitration of a subcontracting grievance, refused even to mention bargaining history that showed repeated unsuccessful attempts by the Union to secure contractual restrictions on subcontracting. International Union of Electrical, Radio and Machine Workers, AFL-CIO v. General Electric Company, 332 F.2d 485, 491 (2d Cir. 1964). See N.L.R.B. v. Gulf Atlantic Warehouse Co., 291 F.2d 475, 477–478 (5th Cir. 1961). Accordingly, in this circuit the courts must construe the "language of the contract as finally agreed upon * * * in accordance with ordinary rules of construction *without reference to the give and take of the bargaining sessions which produced the final terminology.* Otherwise we would abandon completely the parol evidence rule when dealing with this type of contract." N. L. R. B. v. Gulf Atlantic Warehouse Co., *supra* at 477 (Emphasis added). Only where the contract claim and its relationship to the written contract is vague or unclear is such an inquiry permissible, and then not to alter or vary the plain meaning of the contract but merely to understand the exact setting in which it was consummated.[11]

10. The Second, Third, and Fourth Circuits have held evidence of bargaining history inadmissible, *see* International Union of Electrical Radio and Machine Workers, AFL-CIO v. General Electric Company, 332 F.2d 485 (2d Cir. 1964); *Association of Westinghouse Salaried Employees v. Westinghouse Electric Corporation,* 283 F.2d 93 (3rd Cir. 1960); A. S. Abell Company v. Baltimore Typographical Union No. 12, 338 F.2d 190 (4th Cir. 1964), while the Seventh Circuit has taken a contrary view. Independent Petroleum Workers of America v. American Oil Company, 324 F.2d 903 (7th Cir. 1963). The Ninth Circuit has also entertained this evidence, but only where the court's determination would not involve the merits of the underlying dispute. *See* Pacific Northwest Bell Telephone Company v. Communications Workers of America, 310 F.2d 244 (9th Cir. 1962). Similarly, the Second Circuit has carved out an exception to the general exclusionary rule, and has admitted evidence of bargaining history where neither of two proffered interpretations of the exclusionary clause is "patently impossible or unreasonable." Strauss v. Silvercup Bakers, Inc., 353 F.2d 555 (2d Cir. 1965).

11. In no case, however, will the courts examine bargaining history where judicial construction of the arbitration clause in question would involve the resolution of the underlying dispute. This is an inquiry solely for the arbitrator. Pacific Northwest Bell Telephone Company v. Communications Workers of America, *supra. See also* United Steelworkers of America v. Warrior and Gulf Navigation Company, *supra.* (Especially Brennan, J. concurring, 363 U.S. at 572, 80 S.Ct. 1347; A. S. Abell Company v. Baltimore Typographical Union No. 12, *supra* 338 F.2d at 194.

Local Union No. 787, International Union of Electrical, Radio and Machine Workers, AFL-CIO v. Collins Radio Company, 317 F.2d 214 (5th Cir. 1963). Accord, Strauss v. Silvercup Bakers, Inc., 353 F.2d 555 (2d Cir. 1965). But this narrow exception to the general rule of exclusion is not operative here, where both the nature of the Union's claim and the meaning of the collective agreement are evident, and any ambiguity is the result of the Company's "patently impossible or unreasonable" interpretation of the contract and the underlying dispute. Such meritless ambiguity does not require this Court to become entangled in the complex web of contract negotiations. Strauss v. Silvercup Bakers, Inc., *supra* at 558.

On remand the District Court shall order summary judgment for the Union. It is so ordered.