SPERRY SYSTEMS MANAGEMENT DIVISION OF SPERRY DIVISION, SPERRY RAND CORPORATION, Plaintiff,

v.

ENGINEERS UNION, INTERNATIONAL UNION OF ELECTRICAL, RADIO AND MACHINE WORKERS, AFL-CIO, CLC, Defendant.

No. 72 Civ. 3626.

United States District Court, S. D. New York.

Feb. 27, 1974.

Poletti Freidin Prashker, Feldman & Gartner, New York City (Herbert Prashker, New York City, and Edward R. Cohen, Austin, Tex., of counsel), for plaintiff.

Vladeck, Elias, Vladeck & Lewis, New York City (Everett E. Lewis, New York City, of counsel), for defendant.

## OPINION

BAUMAN, District Judge.

Plaintiff, the Sperry Systems Management Division of the Sperry Rand Corporation (hereinafter referred to as "Sperry") sues, pursuant to Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, for an order staying and enjoining arbitration concerning Sperry's right to permit employees of its subcontractors to enter its plant, work alongside its employees, and utilize its equipment. Defendant Engineers Union (hereinafter "the Union") has counterclaimed for an order compelling arbitration pursuant to the terms of the collective bargaining agreement.[1]

Both parties now seek summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

### I.

Before proceeding to a disposition of these motions, I feel constrained to discuss the basis for jurisdiction invoked here.

In 1957 the Supreme Court held that federal district courts are possessed of jurisdiction under Section 301 of the Labor Management Relations Act to entertain suits brought to *compel* arbitration under an existing labor contract. Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). The case before me presents the other side of the coin; an action to *prevent* arbitration. Although some courts have held that the language of §

301 does not confer such jurisdiction,[2] the prevailing view is clearly otherwise. See Black-Clawson, Inc. v. International Association of Machinists, 313 F.2d 179 (2d Cir. 1962) and the cases collected therein.[3] Clearly there is no question that the Union could have initially proceeded under § 301 by an action to compel arbitration. In this day and age it is inconceivable that Congress intended for jurisdiction to depend on the results of a footrace to the courthouse door. The same ultimate questions are involved whether the complaint alleges a "violation" of the contract and requests arbitration or whether it asserts "compliance" and seeks to enjoin improper demands for arbitration. Black-Clawson Co., Inc. v. International Association of Machinists, supra; Application of Contessa Lingerie, Inc., 227 F.Supp. 37 (S.D.N.Y.1964).

The court's jurisdiction has, in my view, been properly invoked, and I therefore proceed to the merits.

### II.

The material facts are not disputed. In the fall of 1971 Sperry was awarded a contract by the City of Atlanta, Georgia for the design and implementation of a traffic control system. Sperry selected Industrial Programming Incorporated (hereinafter referred to as "IPI") as the subcontractor responsible for designing the computer programs for the regulation of traffic signals in that city. While it may have had employees of its own who were qualified to complete such work, Sperry, for perfectly valid cost and scheduling reasons, elected to

---

1. Defendant Engineers Union is certified, by the National Labor Relations Board, as the collective bargaining agent for certain professional and technical employees of Sperry. The collective bargaining agreement in the case at bar was entered into between the parties in June of 1970. Although it expired by its terms on August 15, 1973 it was in effect at all times relevant to the issues involved here.

2. E. g. Hall v. Sperry Gyroscope, 183 F.Supp. 891 (S.D.N.Y.1960); Wamsutta Mills v. Pollock, 180 F.Supp. 826 (S.D.N.Y.1960).

3. True it is that many of the decisions supporting this view arose in suits seeking declaratory judgments, but this hardly seems a meaningful distinction. Regardless of the relief requested, what is ultimately sought is a judicial determination of arbitrability. Camden Industries Co. v. Carpenters Local Union No. 1688, 246 F.Supp. 252 (D.N.H. 1965).

subcontract.[4] This resulted in several IPI employees working alongside Sperry employees in its Great Neck plant. .

In May 1972 the Union submitted to Sperry a document entitled "Statement of Grievance" and numbered 72–31. The grievance stated:

> "The Company has undermined the Union as the Bargaining Agent and the job security and advancement of its members *by bringing non-Sperry engineering personnel into the plant* to perform bargaining unit work.

> "The Union demands that the Company place the above work into the Bargaining Unit or immediately withdraw the above personnel from the Sperry premises." [Emphasis added]

Upon receipt, Sperry informed the Union that such matters were not "grievable [sic] or arbitrable" under the collective bargaining agreement, and therefore Sperry would not process the grievance.[5] Some three months later, Sperry received a notice that the Union had submitted the Statement of Grievance to arbitration.[6] Sperry responded by commencing the instant suit. Its core contention is that the subject matter involved is "specifically excluded" from arbitration under the terms of the collective bargaining agreement.

The agreement at issue contains a broad arbitration clause which reads:

> "1. *Unless otherwise specifically excluded elsewhere* in this Agreement, all disputes, differences and grievances which may arise out of this Agreement including claims arising out of breaches or threatened breaches or violations or threatened violations of this Agreement and which shall not have been satisfactorily settled within two weeks following the procedure herein set forth shall, at the request of either party, be promptly submitted to arbitration." Article XXVI, Section F of the Collective Bargaining Agreement [Emphasis added].

Annexed to and part of the agreement is a document entitled "Subcontracting Memorandum" which provides that "decisions as to 'make-or-buy' and subcontracting must finally rest with the Company, and shall be the responsibility solely of the Company." It concludes with the following paragraph:

> "5. No matter or issue *related to or growing out of subcontracting or 'make-or-buy' decisions* of the Company *or the effect of such decisions* or concerning this Memorandum, shall be subject to the grievance or arbitration procedure of the contract, under any provision of the contract or any provision of this or any other Memorandum or understanding." [Emphasis added]

Plaintiff contends that this paragraph clearly covers the situation encompassed by the grievance in question. Defendant disagrees. It argues that it is not challenging Sperry's right to subcon-

---

4. Affidavit of Eugene F. Kelly, Labor Relations Supervisor for the Sperry Division of the Sperry Rand Corporation, the parent division and parent corporation of Sperry Systems Management Division.

5. This information was contained in a letter from Eugene Kelly, Sperry's Labor Relations Supervisor to Mr. T. Shisko, Chairman of the Grievance Committee for the Union. The letter was dated June 20, 1972, and read as follows:
"Dear Mr. Shisko:
The subject matter of Grievance 72–31 relates to subcontracting. Matters related to or growing out of the Company's subcontracting decisions, or their effects, are not grievable or arbitrable under our agreement. Accordingly, we decline to process this grievance.
Very truly yours,
E. F. Kelly"

6. The notice was sent by the Union's attorneys and read in pertinent part:
"PLEASE TAKE NOTICE that as attorneys for the above named labor organization and pursuant to the terms of its current collective bargaining agreement with you, we hereby submit to arbitration the dispute concerning in-house job shopping in Dept. 3701 of the Systems Management Division."

tract, and concedes that it has no right to do so under the terms of the agreement. Instead, it contends, it is merely challenging Sperry's right to permit the employees of the outside contractors to work in the Sperry plant:

"The Union does not challenge the Company's right to subcontract the work in question. *The gravaman [sic] of the grievance is where the subcontracted work is to be performed.*"[7] [Emphasis added]

Thus, as plaintiff's counsel states, it is clear that the issue presented is whether a grievance claiming that subcontracted work may not be performed on the Company's premises by a subcontractor's employees is, within the meaning of the Subcontracting Memorandum, a matter or issue "related to or growing out of" subcontracting or the effect of a decision to contract-out. If the answer is affirmative, the matter is not arbitrable and an order enjoining the arbitration commenced by the Union must be granted. If the answer is that such grievance is not within the meaning of the Subcontracting Memorandum, defendant's counterclaim must be granted.

The parties are not content, however, to have this issue await a trial. Both have moved for summary judgment contending that, because of the clarity of the contractual provisions involved, and the absence of factual differences, there is no need for a trial. I agree.

### III.

■ It is the responsibility of the *court* to determine whether the parties are bound to arbitrate, and, if so, what issues. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); Torrington Co. v. Metal Products Union, 347 F.2d 93 (2d Cir. 1965), cert. denied, 382 U.S. 940, 86 S.Ct. 394, 15 L.Ed.2d 351

(1965). Defendant's suggestion that the issue of arbitrability is for the arbitrator is without merit. Absent a clear provision in the collective bargaining agreement requiring otherwise, the decision is for the court. United Steelworkers v. Warrior & Gulf Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); Torrington Co. v. Metal Products Union, supra. We are not confronted with such a provision. On the contrary, the Subcontracting Memorandum specifically provides that "no matter concerning this Memorandum shall be subject to arbitration." Hence, the issue of arbitrability here is clearly for the court.

■ It is well settled that a party cannot be required to submit to arbitration that which he has not agreed to submit. Consistency with the federal policy favoring arbitration, however, requires that an order to arbitrate a given grievance not be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers v. Warrior & Gulf Co., 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). This rule, affording a strong presumption of arbitrability, has a crucial limitation set out by the Supreme Court in *Warrior & Gulf*:

"*In the absence of any express provision excluding a particular grievance from arbitration,* we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail . . ." 363 U.S. at 584–585, 80 S.Ct. at 1354. [Emphasis added]

■ It follows that if the subject matter of a dispute is expressly excluded from arbitration by a clear and unambiguous exclusionary clause in the collective bargaining agreement, a party to the agreement cannot be compelled to arbitrate such a dispute. International Ass'n of Machinists and Aerospace Workers v. General Electric Co., 406 F. 2d 1046 (2d Cir. 1969); Procter &

---

7. From defendant's memorandum of law in support of its motion for summary judgment p. 3.

Gamble Independent Union v. Procter & Gamble Mfg. Co., 298 F.2d 644 (2d Cir. 1962).

It is difficult to imagine a clearer exclusionary clause than the one before me. All matters related to or growing out of subcontracting decisions are excluded from arbitration as are matters related to or growing out of the effects of such decisions. To argue that the question of where subcontractors are permitted to work is outside the exclusionary clause is to create ambiguity where none in fact exists. I cannot ignore the plain meaning of the contractual language. Communication Workers of America v. New York Tel. Co., 327 F.2d 94 (2d Cir. 1964).[8] Defendant has itself described the grievance as being one of "where the subcontracted work is to be performed."[9] This is patently a matter "related to" the subcontracting decisions of the Company.

The terms "subcontracting" or "contracting out" have no precise meaning. They are used to describe a variety of business arrangements. Fibreboard v. NLRB, 379 U.S. 203, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964). In their broadest sense, they describe a situation where an employer hires a third party to perform services capable of accomplishment by its own employees. Whether the work is done on or off company premises does not materially affect the characterization of the arrangement as "subcontracting." As often as not, particularly in maintenance work of the type described in both *Warrior & Gulf* and *Fibreboard,* the arrangement contemplates the subcontractors working on the company's premises and alongside its employees.[10] To say that such work is not "related to subcontracting" is to deny the plain meaning of the word.

## IV.

There have been suggestions to the effect that this type of case is not a proper one for summary judgment, and that the question of arbitrability should be finally resolved only after a trial to determine the parties' intentions in incorporating the exclusionary clause.[11] Such a trial would look to the history of the negotiations for illumination.[12]

The circuits do not agree, however, as to whether recourse may be had to the bargaining history between the parties. Communication Workers of America v. Southwestern Bell Tel. Co., 415 F.2d 35 (5th Cir. 1969).[13] Our

8. In *Communication Workers* the union sued to compel arbitration of a grievance relating to "temporary promotion." The collective bargaining agreement involved contained a clause which read:
"In selecting employees for promotion . . . seniority shall govern if other necessary qualifications are substantially equal. In no event shall any grievance or dispute arising out of this section . . . be subject to the arbitration provisions of this Agreement." *Id.* 327 F.2d at 95.
The court granted summary judgment denying arbitration, concluding that the plain meaning of promotion included "temporary promotion" as well as "permanent promotion".

9. See Footnote 7.

10. In *Fibreboard* the Supreme Court specifically defined the type of "contracting out" involved in the case before it as:

". . . the replacement of employees in the existing bargaining unit with those of an independent contractor to do the same work under *similar conditions of employment* . . .". 379 U.S. at 215, 85 S.Ct. at 405 [Emphasis added]

11. See Pacific· Northwest Bell Tel. Co. v. Communications Workers of America, 310 F.2d 244 (9th Cir. 1962) ; Strauss v. Silvercup Bakers, Inc., 353 F.2d 555 (2d Cir. 1965).

12. Although many of the affidavits submitted have dealt with bargaining history I have not considered them. If summary judgment is appropriate it must be granted on the plain meaning of the contractual clause, not by conducting a trial by affidavit.

13. See the collection of cases at 415 F.2d 40, Fn. 10.

204

Court of Appeals has apparently adopted a middle ground, holding evidence of bargaining history inadmissible as a general rule, but allowing an exception where neither of the two proffered interpretations are "patently impossible or unreasonable". Strauss v. Silvercup Bakers, Inc., 353 F.2d 555 (2d Cir. 1965); Local 12298, Dist. 50, U. M. W. v. Bridgeport Gas Co., 328 F.2d 381 (2d Cir. 1964); Communications Workers v. New York Telephone Co., 327 F.2d 94 (2d Cir. 1964). This exception has no application here, where both the nature of the Union's grievance and the meaning of the collective bargaining agreement are evident, and any allegation of ambiguity is the result of the Union's "patently impossible or unreasonable" interpretation of the contract and the underlying dispute. Communications Workers of America v. Southwestern Bell Tel. Co., supra; Strauss v. Silvercup Bakers, Inc., supra. In *Strauss* the court held that it was error for the district court to refuse to consider bargaining history where the language of the exclusionary clause was ambiguous, and neither of the parties' interpretations was frivolous or unreasonable on its face. We have no such ambiguity here. The exclusionary clause is as clear as it is broad. In short, I conclude, with positive assurance, that the collective bargaining agreement is not susceptible of a fair construction that the parties bound themselves to arbitrate grievances of this kind. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); Affiliated Food Distributors, Inc. v. Local Union No. 229, 483 F.2d 418 (3d Cir. 1973). Faced with such a clear and unambiguous exclusionary clause I *do not hesitate to* grant Sperry's cross-motion for summary judgment. Communications Workers of America v. New York Tel. Co., 327 F.2d 94 (2d Cir. 1964);[14] Boeing Co. v. International Union, United A., A. & A. I. Workers, 234 F.Supp. 404 (E.D.Pa. 1964).

*Conclusion*

Plaintiff's cross-motion for summary judgment staying and enjoining the arbitration of the issues raised in Grievance 72–31 and dismissing defendant's counterclaim is granted. Defendant's motion for summary judgment dismissing the complaint, and ordering the plaintiff to proceed to arbitration is denied.

Settle order on notice.