**DISTRICT 50 UNITED MINE WORKERS OF AMERICA and Local No. 15,149 of District 50, United Mine Workers of America**

v.

**CHRIS-CRAFT CORPORATION.**

**Civ. A. No. 4593.**

United States District Court
E. D. Tennessee, S. D.

March 11, 1966.

Wilkes T. Thrasher, Jr., Chattanooga, Tenn., for plaintiffs.

Miller, Martin, Hitching, Tipton & Lenihan, Raymond R. Murphy, Jr., Chattanooga, Tenn., for defendant.

FRANK W. WILSON, District Judge.

This is an action by the Union to compel arbitration by the employer under a collective bargaining agreement. Jurisdiction of the Court is invoked under 29 U.S.C., Section 185(a). The Union contends that the issue for arbitration is whether four employees were discharged for being union officials or representatives. The employer contends that the employees were discharged for engaging in an unlawful walkout and that a discharge under such circumstances is not subject to arbitration by the express terms of the collective bargaining agreement. Although at the time the suit was originally filed the Union sought to compel arbitration of grievances filed on behalf of eight employees, the defendant has since agreed to arbitration of grievances filed on behalf of four such employees and the case remains pending with respect to the plaintiffs' right to require arbitration of the four remaining employee griev-

ances. When the case came on for trial, the parties stipulated to submit the case upon the depositions filed in the cause. Having considered the record in the cause and the argument of counsel, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

(1) The plaintiffs are labor organizations within the meaning of the Labor-Management Relations Act, 29 U.S.C. 152(5). They presently are, and at all times relevant to the issues in this lawsuit were, the bargaining agent for purposes of collective bargaining of the employees at the Chris-Craft Corporation plant located in Chattanooga, Tennessee, which plant is engaged in the production of goods for shipment in interstate commerce.

(2) The defendant corporation is an employer engaged in the boat manufacturing business and having a plant located in Chattanooga, Tennessee. As such, it is an employer engaged in an industry affecting commerce within the meaning of the Labor-Management Relations Act.

(3) Under date of April 16, 1964, the plaintiffs and defendant entered into a collective bargaining agreement, which agreement was in force and effect in July of 1965 and at all times relevant to the issues in this lawsuit. The collective bargaining agreement covered employees of the defendant at its plant in Chattanooga, Tennessee. A grievance procedure is provided in Article V of the contract which provides in part as follows:

"In the event that a dispute shall arise between the Company and the Union, or any employee of the Company who is covered by this agreement relative to working conditions, layoff, or discharge, the following grievance procedure will be used:"

There follows a four-step grievance procedure, the fourth step being arbitration. With respect to the obligation to arbitrate, the contract provides in Article V, Section 5.6, as follows:

"The Company agrees that so long as this agreement is in effect that there shall be no lockouts. * * * The Union, its officers, agents, and members covered by this agreement agree that so long as this agreement is in effect, there shall be no strikes, sitdowns, slow downs, stoppages of work, boycott, or any unlawful acts that interfere with the Company's operation or the production or sale of its products. *Any violation of the foregoing provision may be made the subject of disciplinary action, including discharge, and such action may not be raised as a grievance under this agreement."* (Emphasis supplied.)

(4) Upon Tuesday, July 20, 1965, Charles Ingalls, an employee of the defendant who was covered by the above collective bargaining agreement and who also was the Chief Plant Steward for the Union, reported for work but was ordered to leave the premises by the Plant Manager, Harvey Ross, in a dispute over his alleged unshaven condition. It appears that immediately prior to this date Ingalls had served as a union representative in a grievance procedure involving other employees who were disciplined by the defendant for allegedly reporting to work with beards, a practice which the defendant contends was against its policy. Ingalls had himself been warned the day before about his unshaven condition and upon reporting for employment on July 20 with a mustache, he was ordered to depart by the Plant Manager and not return until he could come clean shaven. Ingalls declined to separate himself either from his whiskers or his job and was thereupon escorted from the plant by a policeman who was called for that purpose. Immediately thereafter a number of the employees who were members of the Union, including James Fletcher, Otis Long, and Malcolm James, walked off of their jobs and joined Ingalls on the street outside. In addition to Ingalls, each of the employees named held some position in the Union, James Fletcher being a committee man, Otis Long and Malcolm James being departmental stewards.

Each of these men remained off of their jobs until Friday, July 23, 1965. During this time they and other employees who had walked out were repeatedly advised by the Regional Director of the Union, Floyd Mills, that the walkout was unauthorized, that their action was in violation of the collective bargaining agreement, and that they were subject to discharge for participating in an illegal walkout. They were repeatedly urged to return to their jobs. By Thursday, July 22, 1965, all but eight of the employees who participated in the walkout had returned to their jobs. These eight, including the four men named above, returned upon Friday, July 23, 1965, only to be advised that they had been discharged for their participation in the walkout. Grievances were filed on behalf of each of the eight employees who were thus discharged, but the defendant refused to process or arbitrate these grievances, contending that the discharges were not subject to arbitration under the contract. This suit was thereupon filed by the Union seeking to compel arbitration. As stated above, since the filing of the suit, the defendant has consented to the arbitration of grievances upon behalf of four of the terminated employees, with this case remaining pending only with regard to the plaintiffs' contention that the defendant should be required to arbitrate the grievances filed upon behalf of Ingalls, Fletcher, Long, and James.

## CONCLUSIONS OF LAW

(1) This Court has jurisdiction over the parties and over the matters here in issue under 29 U.S.C., Section 185(a).

■■■ (2) The plaintiffs are not entitled to require the defendant under the collective bargaining agreement to arbitrate the grievances filed upon behalf of the four employees here involved. Each of the above findings of fact is undisputed in the record. It is undisputed that each of the four employees discharged did knowingly and intentionally participate in an unauthorized walkout, remaining off of the job from Tuesday until Friday, even though they were urged by union officials to immediately return to work. It is undisputed that participation in a walkout or strike during the period of the contract is expressly made a ground for discharge, which discharge is not subject to arbitration under the contract. Whether or not an employer is bound to arbitrate under the provisions of a collective bargaining agreement, as well as what issues he must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties. A court cannot compel a party to a collective bargaining agreement to submit to arbitration without a judicial determination that the agreement does in fact create such a duty. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898. Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Atkins v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462. While the weighing of the merits of an arbitrable grievance is not a function of the courts, as held in the Steelworkers trilogy,[1] the courts are charged with the duty of determining whether under the contract language and under the undisputed facts an arbitrable issue is raised. The plaintiffs rely heavily upon the case of Los Angeles Paper Bag Co. v. Printing Specialities, etc. Union, 345 F.2d 757 (C.A. 9, 1965). Although the contract language there was similar to that in the present case, the facts there were in dispute. An issue of fact existed as to whether the discharged employees had in fact participated in an illegal walkout or whether their absence was with the consent and permission of the employer. Under these circumstances the Court properly held that the employer would be required to arbitrate and could not unilaterally determine the

---

1. United Steelworkers v. American Manufacturing Co., 363 U.S. 565, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424.

fact issue of whether an unauthorized work stoppage had occurred. No such fact issue exists in this case. As stated above, it is undisputed that an unauthorized work stoppage did occur and that each of the employees whose grievance is now sought to be arbitrated did in fact participate in the walkout and that grounds for discharge which were not arbitrable did exist. The only possible issue of fact here sought to be raised was that since other employees who had participated in the walkout were not discharged, the employer's motive for discharging these four was put in issue and subject to arbitration. Whether the employer may or may not have had some additional motive for discharging the employees, does not alter the fact that undisputed grounds for discharge existed which were not subject to arbitration under the contract. Where a non-arbitrable reason for discharge undisputedly exists, the courts are not permitted to ignore the language of the contract and order arbitration upon the speculation that additional and arbitrable reasons may also have existed for the discharge. To do so would be for the Court to rewrite the collective bargaining agreement.

The origin of this lawsuit was well summarized by Mr. Mills, the Union representative, when he stated, "I think it is one of the most foolish things that has ever happened, of such a thing occurring over the question of beards." This lawsuit, which has now engaged the attention of able legal counsel for a period of months, has consumed many hours' time of witnesses, has involved the taking of voluminous depositions, has cost both sides heavily in time and money, has cost the jobs of four employees, and has now engaged the time and attention of this Court, could at one time have been settled in a few minutes by a barber. But such is human nature and such is the nature of labor-management controversies that small and foolish things can sometimes spark a major controversy.