**GENERAL FOAM CORPORATION,**
**Plaintiff,**

v.

**DISTRICT 50, UNITED MINE WORK-ERS OF AMERICA and Local Union 15371 of District 50, United Mine Work-ers of America, Defendants.**

**Civ. No. 9373.**

United States District Court
M. D. Pennsylvania.

March 30, 1967.

Nogi, O'Malley & Harris, Scranton, Pa., for plaintiff.

Rosenn, Jenkins & Greenwald, Wilkes-Barre, Pa., for defendants.

## OPINION

SHERIDAN, Chief Judge.

This is a motion by defendants to dismiss the complaint for failure to state a claim upon which relief can be granted.

The action was begun to compel arbitration under Section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C.A. § 185, and the Declaratory Judgment Act, as amended, 28 U.S.C.A. § 2201.

The complaint alleges that the dispute involved arose on February 2, 1966, when a walkout occurred among plaintiff's employees who were members of and represented by the defendant unions. The walkout ended on the same day it began. Shortly thereafter plaintiff informed defendants that one of the employees involved, John Matteo, participated in or was responsible for the strike. Plaintiff requested that the issue of Matteo's innocence or guilt with respect to his participation or responsibility be arbitrated before the company undertook disciplinary action. The defendants refused. Plaintiff therefore brought this action to compel arbitration.

Both sides agree that whether Matteo was responsible for the walkout is a subject for arbitration under the collective bargaining agreement. Defendants contend, however, that whether Matteo's responsibility should be arbitrated before

or after he is disciplined is in itself a dispute which is covered by the arbitration clause, and that this action must be dismissed and the parties sent to arbitration on both issues. In effect, defendants contend that there is a dispute as to whether a condition precedent to arbitration of the main dispute has been complied with. Plaintiff contends that the question of when disciplinary action must be taken is not a dispute subject to arbitration and that under the clear language of the agreement, only the question of Matteo's responsibility, which they seek to have arbitrated, is arbitrable.

■ Whether or not the company was bound to arbitrate the issue as to the time when disciplinary action must be taken is a matter to be determined by the court on the basis of the contract entered into by the parties. Atkinson v. Sinclair Refining Co., 1962, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462; Local Union No. 490, United Rubber, Cork, Linoleum, & Plastic Workers of America v. Kirkhill Rubber Co., 9 Cir. 1966, 367 F.2d 956. In Boeing Co. v. International Union, UAW, 3 Cir. 1967, 370 F.2d 969, the court said:

" * * * [A]rbitration clauses, such as those usually contained in labor-management contracts, should be so construed as to effectuate congressional policy favoring the settlement of labor disputes. It was held in United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960): 'An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' Despite this liberal rule of construction a reluctant party may not be compelled to submit a controversy to arbitration unless under a fair construction of the agreement he is bound to do * * *. Absent a contractual obligation to the contrary, a reluctant party is free to pursue any available legal remedy to redress its grievances." (Citations omitted.)

In Strauss v. Silvercup Bakers, Inc., 2 Cir. 1965, 353 F.2d 555, the court said:

" * * * The Supreme Court, although strongly favoring arbitration of labor disputes in its many recent decisions on the subject, has nevertheless maintained that '[t]he duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty.' * * * The courts have the duty to determine whether the reluctant party has breached his promise to arbitrate, * * * unless the contract clearly manifests an intention that arbitrability should be decided by the arbitrator. * * * [T]he Supreme Court held that the question of arbitrability was for the courts, even though the arbitration clause covered 'any act or conduct or relation between the parties.' * * * Moreover, the juxtaposition of an 'all disputes' clause in a collective bargaining agreement with a clause excluding certain disputes from arbitration suggests that the parties intended to have questions concerning the scope of the exclusion decided in the first place not by the arbitrator, but by the courts.

"It is clear that a provision must be specific if it is to exclude a claim from arbitration, but it is not clear how specific the provision must be in order to have this effect. * * *

"We are aware of the danger that courts will become 'entangled in the construction of the substantive provisions of a labor agreement * * * through the back door of interpreting the arbitration clause * * *.' * * * But the inquiry here is directly connected with the extent of the duty to arbitrate, and does not touch upon the merits of the dispute. The ultimate issue is whether the court can say with positive assurance that the exclusionary clause applies to the

dispute sought to be arbitrated. * * " (Citations omitted.)

With these principles in mind, the contentions of the parties can be considered. Neither plaintiff nor defendants has submitted matters outside the record which bear on the intent of the parties in entering into the agreement. Each side relies solely on the language of the agreement.

Although Article XI of the agreement includes a broad grievance and arbitration provision,[1] plaintiff urges that Article XII of the agreement dealing separately with "Strikes, Stoppages And Lockouts" specifically excludes from the grievance and arbitration procedure the alleged dispute which defendants maintain is subject to arbitration. Article XII A provides:

"Since the Agreement provides for an orderly method for the adjustment of disputes, strikes, stoppages and lockouts are prohibited. If, however, a strike or stoppage should occur, the Union will immediately, upon being informed by the Employer by telegram at the Union's office at Wilkes-Barre, Pennsylvania, order the workers to return to work. The Union further agrees that any employee or group of employees who participate in or are responsible for any unauthorized strike, boycott, slowdown, or work stoppage, shall be subject to disciplinary action, including discharge. *Only the question of fact as to whether an employee participated in or was responsible for such strike, boycott, slowdown, or work stoppage shall be subject to review through the grievance procedure of this contract.*" (Emphasis supplied.)

Article XII A clearly excludes from arbitration the question of whether disciplinary action must be taken before or after the primary dispute of responsibility for the strike is arbitrated. It preserves for arbitration only one matter

in connection with any work stoppage— the question of whether a particular employee participated in the work stoppage. Had the clause merely provided for arbitration of an employee's responsibility, defendants' argument might have some merit. The use of the word "only," however, clearly limits the question which is subject to arbitration. Cf. Utility Co-Workers Assn. v. Public Serv. Elec. and Gas Co., 3 Cir. 1965, 344 F.2d 102; Boeing Co. v. International Union, UAW, supra; District 50 UMW v. Chris-Craft Corp., E.D. Tenn. 1966, 251 F.Supp. 755.

The reason an employer would desire such a clause in a collective bargaining agreement is readily apparent. In a plant such as plaintiff's where hundreds of persons are employed, the selection of the employee or employees responsible for work stoppage might be very difficult. If the employer were required to fire an employee and then arbitrate his guilt, he might find that he selected the wrong employee and thereby incurred the expense of a substitute as well as the expense of back wages and penalties for the wrongful discharge. Thus, without such a limitation on arbitrable issues in the work stoppage clause, an employer must run the substantial risk of increased costs or forego his right under the agreement to seek out and discipline those responsible for work stoppage.

The foregoing provides reason enough to deny defendants' motion. A few additional comments, however, are in order. Defendants in their brief refer several times to the "strong policy favoring arbitration." They neglect to point out that the purpose of this policy is to promote industrial stabilization and industrial peace. United Steelworkers of America v. Warrior & Gulf Navigation Co., 1960, 363 U.S. 574, 578, 80 S.Ct. 1347, 4 L.Ed.2d 1409. At the argument on the motion counsel for defendants admitted that defendants' purpose in demanding disciplinary action before arbi-

---

1. "Any complaint, grievance or dispute arising out of or relating to the provisions of this agreement, or the interpre- tation or performance thereof, shall, in the first instance, be taken up for adjustment in the following manner:"

tration of Matteo's guilt was to place upon plaintiff the risk of increased costs if it selected the wrong man. If plaintiff is precluded from taking advantage of its contractual rights because of the heavy price for a wrong choice, work stoppages without fear of sanction and contrary to the agreement could result whenever the employees have some real or fanciful grievance. This, of course, is contrary to the federal policy. On the other hand, to arbitrate the question of Matteo's guilt before disciplinary action is taken, is harmful to no one and industrial stability and peace are promoted.

The defendants' motion will be denied. In view of this disposition, it is not necessary to consider plaintiff's objection to the procedure followed by defendants in filing successive motions to dismiss.