**LOCAL 464, AMERICAN BAKERY AND CONFECTIONERY WORKERS INTERNATIONAL UNION, AFL-CIO, Plaintiff,**

v.

**HERSHEY CHOCOLATE CORPORATION, now, by change of name, Hershey Foods Corporation, Defendant.**

**Civ. No. 9687.**

United States District Court,
M. D. Pennsylvania.

Jan. 12, 1970.

As amended Feb. 19, 1970.

Bernard N. Katz, Meranze, Katz, Spear & Bielitsky, Philadelphia, Pa., Harold Tull, Harrisburg, Pa., for plaintiff.

Samuel A. Schreckengaust, Jr., McNees, Wallace & Nurick, Harrisburg, Pa., for defendant.

**FINDINGS OF FACT,
CONCLUSIONS OF LAW
AND OPINION**

SHERIDAN, Chief Judge.

In this action plaintiff seeks to compel defendant, Hershey Foods Corporation,[1] to arbitrate the question of whether plaintiff should be recognized by defendant as the exclusive bargaining agent of one of defendant's wholly owned subsidiaries. The trial was to the court without a jury.

Jurisdiction is based on Section 301 of the Labor-Management Relations Act, as amended, 29 U.S.C.A. § 185.

The complaint alleges that: Local 464 and Hershey are parties to a collective bargaining agreement which requires defendant to recognize plaintiff as a collective bargaining agent for all of the employees at defendant's Hershey, Pennsylvania plant; the agreement applies to all operations within its scope; prior to this action, defendant acquired Reese Candy Company as a wholly owned subsidiary; Reese's production and shipping operation have been increasingly in-

---

I. On February 11, 1968, Hershey Chocolate Corporation changed its corporate name to Hershey Foods Corporation.

tegrated with defendant's Hershey plant so as to require recognition of plaintiff as the exclusive bargaining agent for Reese employees as well as for defendant's employees; plaintiff made demand for recognition which defendant rejected as well as a demand to arbitrate under the agreement; plaintiff advised defendant that the failure to encompass Reese employees under the collective bargaining agreement is a violation of the agreement, but defendant denies the violation; and, as a result, a dispute exists which falls within the scope of the grievance and arbitration procedure of the agreement, but defendant refuses to honor plaintiff's requests to arbitrate. Plaintiff prays that defendant be directed to proceed to arbitration. A copy of the agreement is attached to the complaint. In its answer defendant denies that the

production and shipping operations of Reese have been increasingly integrated and that the integration has resulted in a merger of operations. Defendant also denies that the dispute is within the scope of the grievance and arbitration provisions of the collective bargaining agreement. It admitted all other allegations, except it supplied July 2, 1963, as the date of purchase of the assets of Reese, and it also supplied a copy of a letter of September 26, 1966, in which it rejected plaintiff's demand for arbitration as alleged in paragraph 10 of the complaint, and reviewed plaintiff's prolonged and unsuccessful attempts to organize Reese employees.

Plaintiff contends the dispute falls within the broad arbitration provisions of Section 9 of the agreement.[2] Defend-

2. "9. GRIEVANCE PROCEDURE

(a) Any matters which an employee may desire to discuss and adjust with the Employer shall be handled as follows:

(1) The employee shall report such matter to the representative selected for the shift on which the employee works. That representative, together with the employee involved, shall discuss the matter with the immediate foreman of such employee.

(2) Should the employee affected and the representative and foreman be unable to reach a satisfactory settlement, the foreman's immediate superior or supervisor shall meet with them and the Union Steward, if any, in a further effort to reach a satisfactory conclusion of the matter.

(3) If a settlement is not reached at this stage of the procedure, the matter shall be referred to the Branch President and a person to be designated by the Plant Manager for disposition. Any matter referred to the Branch President and the Plant Manager's representative shall be in writing on a form agreed upon by the Employer and the Union. There shall be endorsed on the back of said form the entire history of the controversy.

(4) If the Branch President and the Plant Manager's representative are unable to reach a satisfactory conclusion of the controversy, the written dispute presented to them shall be referred to the Conference Committee.

(5) In the event that any dispute is not settled within seven (7) working days after submission to the Conference Committee, the dispute shall be determined by arbitration before an impartial arbitrator designated as hereinafter provided. The final decision of such arbitrator shall be binding upon both parties, and the expense of the arbitration shall be borne equally by the parties to this Agreement. Time spent by an aggrieved employee, or other employees of the Employer in or before the Conference Committee, at its request, shall be considered as time worked, but they shall not be paid premium pay for such time unless they would otherwise have earned premium pay on their jobs.

(6) The parties, by agreement, have established a panel of three (3) impartial arbitrators to serve during the term of this Agreement. The selection of the arbitrator from the panel to determine a particular dispute shall be by agreement of the parties, or failing agreement, by the 'crossing' (striking) method of selection.

(b) Both the Employer and the Union shall make every effort to reach the earliest possible settlement of matters at the lowest level in the procedure, and any settlement reached at any stage shall be final and conclusive.

(c) Except as provided in Paragraph 28 hereof, (as interpreted by Dr. Robert P. Brecht, arbitrator in the Steel Rolls

ant contends the agreement deals only with disputes concerning the employer-employee relationship and that this dispute, not touching its employees, is outside the agreement.

Plaintiff previously moved for judgment on the pleadings. In denying the motion,[3] Judge Follmer of this court recognized that paragraph 9 of the collective bargaining agreement contained a broadly worded grievance and arbitration procedure under which the parties agreed to discuss "any matters." He decided, however, that the dispute was completely outside the employer-employee relationship and did not come within the classes of arbitrable grievances contemplated by the contract:

"Defendant states, and plaintiff does not deny, that plaintiff has been engaged in a prolonged organizational campaign at the Reese plant, which campaign resulted in an overwhelming defeat by the Reese employees in a representational election held August 19, 1966.

" * * *

" * * * It is perfectly obvious that the phrase 'any matters' is subject to the good faith limitation that the 'matters' in question be related to the employer-employee relationship as that relationship is set forth in the aforementioned bargaining ageement since (1) the clause only refers to the employee and the employer and (2) the conjunctive is used to join 'discuss' and 'adjust,' thus implying that the matter must be within the employer's power to correct. Here, the plaintiff seeks to include within the ambit of the agreement another corporation and another set of employees and have this other corporation and other em-

ployees, who, incidentally, within the past year voted not to be represented by this very Union, covered by the Hershey contract. By no stretch of imagination could this be found to contain something that a Hershey employee may in good faith ask the employer to 'discuss and adjust.' It is completely outside of the employer-employee relationship which paragraph 9 was designed to protect.

"The contract does contemplate certain matters only indirectly affecting the employer-employee relationship in paragraph 3, 'No Coercion By Union,' and in paragraph 6(b), dispute as to Union membership, in both of which grievance procedure and arbitration are provided for.

"It must be remembered here that Reese was acquired by Hershey nine months prior to the execution of the collective bargaining agreement. Had the parties intended that the relationship between Hershey and Reese was to be the subject of the contractual grievance procedure between Hershey and the Union they would have expressly so stated as they did in the matters above referred to as appearing in paragraphs 3 and 6(b).

"The present Union contention involves a matter wholly beyond the employer-employee relationship and consequently does not come within the classes contemplated by the contract.

"It is well settled that in determining whether or not the parties to a bargaining agreement intended that a particular issue be arbitrable, the Court may consider the past practice of the parties and prior bargaining history. * * * Defendant should not be deprived of the right to show

Arbitration, dated September 11, 1951, attached as an appendix hereto*) during the consideration of any dispute by the Conference Committee, or the arbitrator, neither party hereto shall change the working conditions existing at the time such disputes arose, nor utilize coercive or retaliatory measures to compel the other party to accede to its demands.
(d) The Branch President, or other

representative or representatives designated by the Union's Conference Committee, shall be admitted to any department of the Factory during working hours upon consent of the Plant Manager."

3. Local 464, American Bakery and Confectionery Workers Intern. Union A.F.L.–C.I.O. v. Hershey Chocolate Corp., M.D. Pa.1967, 266 F.Supp. 276

the past practices and bargaining history.

" * * *

The issue which the Union wants to arbitrate does not involve the employer-employee relationship at defendant's Hershey plant, nor does it involve an interpretation or application of the collective bargaining agreement between the Union and Hershey, it seeks to encompass the relationship between Hershey and Reese. * * *

" * * * " (266 F.Supp. 277–279, citations omitted.)

Thus, in reaching his decision, Judge Follmer considered not only the language of the contract, but also the bargaining history of the parties and statements that Reese employees had overwhelmingly rejected prolonged attempts by plaintiff to organize them.[4]

Plaintiff contends that in denying the motion for judgment on the pleadings, Judge Follmer erred in considering the past practice and bargaining history of the parties, and at the trial it objected to all such evidence produced by defendant. Plaintiff rested its case after introduction of the pleadings. An important preliminary question, therefore, is whether the court should consider the evidence adduced by defendant.

Plaintiff relies on Local 719, American Bakery and Confectionery Workers of America, AFL–C.I.O. v. National Biscuit Co., 3 Cir. 1967, 378 F.2d 918: "This court, at least in proceedings prior to arbitration, has refused to review the bargaining history *where the language of the labor contract read in the light of the presumption of arbitrability favors arbitration.*" (Emphasis supplied.) In support of this statement, the court cited its earlier decision in Communications Workers of America v. Bell Tel. Lab., 3 Cir. 1965, 349 F.2d 398, in which the court said:

"We adhere to our decisions in Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 3 Cir., 283 F.2d 93 (1960) and General Warehousemen and Employees Union No. 636 v. American Hardware Supply Co., 3 Cir., 329 F.2d 789 (1964), cert. den. 379 U.S. 829, 85 S.Ct. 57, 13 L.Ed.2d 37. They bespeak our view of the law settled in United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. [1343], 1363, 4 L.Ed.2d [1403] 1432 (1960); United Steelworkers of America [A.F.L.-C.I.O.] v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, [80 S.Ct. 1358, 4 L.Ed.2d 1424] (1960). They are consistent with John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). These cases stand for the proposition that when the issue presented is, on its face, within the contractual agreement to arbitrate, the court shall not interfere.

"Employer relies upon Pacific Northwest Bell Telephone Co. v. Communications Workers of America, 310 F.2d 244 (9 Cir. 1962), in support of its offer of proof. We need not decide whether the theory of that case is supportable, for it is distinguishable: there, the court was faced with what it considered an omission of expression in the contract. Here, the contract to arbitrate specifically includes differences with respect to interpretation of the agreement as well as violations of contractual commitments."

The question then is whether the issue *on its face* is within the contractual agreement to arbitrate, and whether it can be considered that there is an omission of expression in the contract.

In Strauss v. Silvercup Bakers, Inc., 2 Cir. 1965, 353 F.2d 555, the court had before it a clause which provided that "There shall be arbitration for *all* disputes which may arise between the

---

4. This is supported also by the letter of September 26, 1966, attached to defendant's answer as Exhibit A.

parties hereto." (Emphasis supplied.) Another clause provided that "the Employer may at any time request a meeting with the Union, for the purpose of negotiating and mutually agreeing on * * * other methods of compensation or delivery methods which may be desirable under changed conditions" and "[i]n the event the parties are unable to agree, the dispute shall *not* be subject to the Arbitration Procedure of this Agreement." (Emphasis supplied.) The bakery proposed to change deliveries from six days to five days a week which would have resulted in loss of jobs for 55 employees. The union objected and refused the bakery's request to arbitrate on the ground that the dispute was specifically excluded from arbitration. The union contended this was a change in "method of delivery" under the exclusionary clause. The bakery contended the only changes in deliveries contemplated by the contract were changes in entire methods of delivery, and did not include changes in deliveries which retained the same method of delivery with changes only in the number of days or the number of employees. The court held that neither construction was patently impossible or unreasonable, and that:

> " * * * the mere fact that neither of two proffered interpretations of an exclusionary clause, one of which would permit arbitration, the other of which would prevent it, is frivolous or unreasonable on its face, does not mean, as the trial court apparently believed, that the court must order the parties to proceed to arbitration. We believe that the trial court should have accepted proffered proof relevant to the intentions of the parties at the time they drafted their agreement. The duty to arbitrate being contractual in origin, the court must make an effort to construe the extent of that contractual duty, rather than force arbitration even of arbitrability upon parties who did not bind themselves to such a submission. Further in-

quiry may well enable the trial court to say with 'positive assurance' that the exclusionary clause covers this dispute, so that the request for an order compelling arbitration should be denied. On the other hand, further inquiry may also indicate that the trial court cannot positively declare that the parties intended to exclude the dispute from arbitration—in which case, the trial court must issue an order directing the parties to proceed to arbitration."

While in Strauss the court had before it an exclusionary clause, it should be noted that a matter may be excluded because it is not included, when the language of the agreement limits arbitration to a dispute between a particular class of persons or entities, Boeing Co. v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW A.F.L.-C.I.O.), 3 Cir. 1967, 370 F.2d 969, or to a particular dispute, General Foam Corp. v. District 50, United Mine Workers of America, M.D.Pa.1967, 266 F. Supp. 249. It seems that the dispute here does not fall within the arbitration provisions of the agreement even without resort to outside evidence. It is true that clause 9 provides for arbitration of "any matters," but as pointed out by Judge Follmer, this is qualified by language in the same sentence which limits the matters to the employer-employee relationship and must be within the employer's power to adjust.[5] The agreement then prescribes a six step procedure to process the grievance of the employee. This is similar to the situation in Boeing Co. v. International Union, United Aeorspace Automobile and Agricultural Implement Workers of America (UAW, A.F.L.-C.I.O.), supra:

> "It is apparent from a reading of the contract that the grievance procedure is employee oriented. The grievance procedure is available only to the employees as 'the exclusive remedy for the disposition of any claim,

5. See note 2, supra.

dispute or grievance of any kind * * * *Against the Company.'* (Emphasis supplied.) Article VI, § 7. The only arbitrable grievances are those 'involving the interpretation or application of the provisions of [the] agreement which [have] been processed through Step 4 of the grievance procedure,' supra. The entire procedural structure is designed to resolve only the employees' grievances against the company. This seems obvious from a consideration of Article V–A (Grievance Procedure) and Article VI (Arbitration) in their entirety.

"It is our opinion that we have before us a case in which 'it may be said with positive assurance,' as in *Atkinson,* supra, that the arbitration clause is not susceptible of a construction that the plaintiff was bound to arbitrate the issues involved in its action for damages."

Similarly, clause 3 relates to a pledge by the Union not to coerce employees into membership and states "If any dispute arises as to whether there has been any violation of this pledge or whether any employee affected by this clause has been deprived of good standing in any way contrary to the Constitution and by-laws of the Union, the dispute shall be regarded as a grievance" and submitted to the grievance and arbitration machinery. It is apparent that this clause, under the section entitled "No Coercion by Union," is directed at *union action* in either violating its pledge not to coerce employees to join the union or in excluding employees from the union. Defendant has not complained of coercion of employees into the union and has not complained that employees are excluded. Certainly, under these circumstances it would be unreasonable to interpret this clause to concern employees not of defendant, but of another company. To permit plaintiff to proceed under this clause would be to permit plaintiff to arbitrate a "dispute" created by it, when defendant has not accused plaintiff of a violation.

Clause 6(b) under the section entitled "Union Security and Check-Off," provides that "[i]f any dispute arises at any time as to whether an employee is or is not a member of the Union *in good standing,* and an agreement cannot be reached, the dispute shall be adjudicated by an arbitrator. * * * *"* (Emphasis supplied.) This clause, when read in the light of the other clauses in this section, makes it clear that it controls disputes concerning defendant's *employees* in good standing. Certainly a dispute with respect to "good standing" implies previous or contemplated membership in the Union. It grows out of the employer-employee relationship and has nothing to do with persons, employed by another firm, who do not belong to plaintiff's union. In summary, all of these clauses would fall under the holding of Boeing Co. v. International Union, United Automobile Aerospace and Agricultural Implement Workers of America (UAW, A.F.L.-C.I.O.), supra. Finally, the bargaining unit described in Section 1 of the agreement relates only to *employees* of *Hershey.*

However, even assuming that the two proffered interpretations of the contract, one which would permit arbitration and one which would prevent it, are not frivolous or unreasonable, then under Strauss v. Silvercup Bakers, Inc., supra, an ambiguity exists and the dispute on its face is not within the contractual agreement. In such case, there is an omission of expression and evidence can be resorted to to determine the intent of the parties. Strauss v. Silvercup Bakers, Inc., supra; Independent Petroleum Workers of America, Inc. v. American Oil Co., 7 Cir. 1963, 324 F.2d 903, aff'd by an equally divided court, 1964, 379 U.S. 130, 85 S.Ct. 271, 13 L.Ed.2d 333; Local Union No. 483, International Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, A.F.L.-C.I.O. v. Shell Oil Co., 7 Cir. 1966, 369 F.2d 526; Communications Workers of America v. Pacific N. W. Bell Tel. Co., 9 Cir. 1964, 337 F.2d 455; Independent Oil Workers

Union, Local 117 v. American Oil Co., D.Kan.1969, 296 F.Supp. 650.[6] Here, the defendant's evidence stands uncontradicted and clearly establishes that the dispute or issue in this action is not subject to the arbitration provisions of the contract. Reese was acquired by defendant in July 1963. The contract under which plaintiff initially attempted to force arbitration of this issue was negotiated in late 1963 and was to run from April 14, 1964, to December 31, 1966. Mr. Zimmerman, defendant's employee, who participated in all labor negotiations for defendant from 1961 to the present time, testified that during the negotiations of the 1964–1966 contract, plaintiff made no demand and initiated no discussions concerning the representation of Reese employees.

It was not until July 26, 1966, that plaintiff, through counsel, advised counsel for Reese[7] that "an overwhelming majority" of the Reese employees had designated plaintiff as their exclusive bargaining agent and requested commencement of collective bargaining. In a letter, dated July 29, 1966, Reese replied that it had a good faith doubt that plaintiff was supported by a majority of its employees and on that date filed a RM petition[8] with the National Labor Relations Board for a determination of the matter. The Board conducted an election and on September 14, 1966, the Board certified that a majority of the ballots had not been cast for any labor organization on the ballot, and that there was no exclusive representative.

Having failed to organize the Reese employees, plaintiff decided on a new approach. On September 22, 1966, counsel wrote to defendant's counsel stating "Apparently, the present ownership status [of Reese] as well as operational interrelationship with Hershey Chocolate Corporation poses a question of whether the Reese operation is, in fact, within Article I of the present collective bargaining agreement [with Hershey]," and requested defendant to afford coverage and recognition of the Hershey agreement to Hershey-Reese employees and work. Anticipating a rejection of this request, plaintiff also requested that the matter be arbitrated, skipping the lower echelons of the grievance procedure. In a letter, dated September 26, 1966, defendant's counsel rejected the request, and in November 1966, plaintiff filed this action.

In the meantime, toward the latter part of 1966, negotiations between plaintiff and defendant began for an agreement with respect to Hershey employees to replace that which was to expire on December 31, 1966. These negotiations were conducted over a four or five month period and the resulting agreement was signed in early 1967 and was to remain in effect until December 31, 1969. During these negotiations plaintiff made no oral or written demand and initiated no discussion concerning the issue here in question. The arbitration clause in all agreements between plaintiff and defendant has remained the same from a time prior to defendant's acquisition of Reese to the present time, as has the description of the bargaining unit contained in Section 1 of the agreement.

In January 1969, plaintiff petitioned the National Labor Relations Board to hold another election concerning its representation of Reese employees. The election was held on February 20, 1969, and of 424 votes, only 16 were cast in favor of plaintiff. The Board certified that no labor organization represented Reese employees.

Other evidence indicates that, in addition to Reese, Hershey has many wholly owned subsidiaries, each with its own

---

6. Most of these cases cite and discuss the same Supreme Court cases as cited and discussed in Local 719, American Bakery and Confectionery Workers of America A.F.L.-C.I.O. v. National Biscuit Co., 3 Cir. 1967, 378 F.2d 918.

7. Reese and defendant have the same counsel.

8. A RM petition is an employer petition for determination of a claim by a Union to be recognized as the representative of the employees.

collective bargaining union representative. The collective bargaining agreements are negotiated between those companies and the unions.

██ In summary, either from the contract itself, or from the contract and the evidence, it is clear that the dispute falls outside the collective bargaining agreement between plaintiff and defendant. In reaching this result, the admonition in Strauss v. Silvercup Bakers, Inc., supra, that courts should not permit inquiries into bargaining history to draw them "into the merits of a labor dispute without shedding too much light on the extent of the duty to arbitrate," was heeded. Thus, this court has not considered and expresses no opinion as to whether the operations of Reese and Hershey are in fact highly integrated and if so, whether this would move the Reese employees under the Hershey agreement.

These findings of fact, conclusions of law and opinion are in support of final judgment entered for defendant.