### VICTOR ELECTRIC WIRE AND CABLE CORPORATION

v.

### INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 2014.

Civ. A. No. 75–388.

United States District Court, D. Rhode Island.

April 19, 1976.

Richard W. Gleeson, Boston, Mass., for plaintiff.

Milton Stanzler, Providence, R. I., for defendant.

## OPINION

PETTINE, Chief Judge.

Plaintiff Victor Electric Wire and Cable Corporation (hereinafter "the Company") has brought the within action to set aside the award of Arbitrator Craig Overton of November 7, 1975, ordering the reinstatement of its employee Edward Noel. The defendant International Brotherhood of Electrical Workers, Local 2014 (hereinafter "the Union"), of which Edward Noel is a member, has responded by filing a counterclaim seeking enforcement of the arbitration award and attorneys' fees. Jurisdiction is founded in section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The parties agree that none of the factual issues is in dispute and have therefore filed cross-motions for summary judgment.

### Decision of the Arbitrator

On April 23, 1975, Edward Noel was an employee of the Company at its Westerly, Rhode Island, plant and a shop steward under Article IV of the Collective Bargaining Agreement (hereinafter "the Agreement") then in effect. On that day employees of the Company at its plant in West Warwick, Rhode Island, who had been covered by a separate labor contract, struck that plant and set up picket lines there and at the Westerly plant as well. According to the decision of the Arbitrator, Mr. Noel participated in the picketing of the Westerly plant in violation of Article XVII of the Agreement, which in pertinent part provides:

"17.0 In view of the mutual interest of the Company, the Union and employees in the maintenance of uninterrupted production, the Company agrees that there shall be no lockouts, and the Union agrees they will not cause or sanction or take part in any strike, walkout, work stoppage, slowdown or picketing for the duration of this contract or any extension or renewal thereof. All disputes shall be handled in accordance with the terms of the Grievance Procedure contained in this contract.

The Union and its members, individually and collectively, agree that if there is a violation of this clause, any or all employees violating this clause will be subject to disciplinary action by the Company, including discharge, suspension, or complete loss of seniority. Employees shall have the right to appeal through the Grievance Procedure of the contract only as to the question of participation."

Due to their participation in the strike and pursuant to § 17.0, the Company discharged Mr. Noel and three other Westerly employees on April 29, 1975. On May 2, 1975, the Company gave the other three employees the opportunity to return to work. Viewing Mr. Noel's conduct as more egregious than that of the other three employees, the Company refused to reinstate him. The Arbitrator, however, rejected the Company's viewpoint. He found that Mr. Noel's participation in the strike was basically identical to that of Dennis Kelly, one of the three employees who had been reinstated by the Company. As a result, the Arbitrator found that the Company, in singling out Mr. Noel for discharge, had violated Article XVIII § 18.4 of the Agreement which provides:

"18.4 All present benefits and privileges accorded employees will be continued for the duration of this Agreement unless changed by mutual agreement. There shall be no discrimination against any employee in the allocation of any benefits, privileges, rights or assignments."

The Arbitrator stated:

"In this case there was discrimination against Mr. Noel when the Company decided not to reinstate him. All employees are entitled to be treated equally and since Dennis Kelly was rehired Mr. Noel should have been also. The opportunity to have a job is a benefit, a privilege, a right and an assignment and the aforementioned article states clearly that there should be no discrimination against any employee in the allocation thereof."

The Arbitrator therefore awarded Mr. Noel reinstatement and full restoration of back pay and fringe benefits.

### The Standard for Judicial Review

The Company seeks to set aside the award of the Arbitrator on the ground that in making his award, the Arbitrator exceeded the scope of his authority.

In testing the validity of the Company's position, we must start with the decision of the United States Supreme Court in *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), which establishes the standard for judicial review of an arbitration award under a collective bargaining agreement. There the Court stated at 596–597, 80 S.Ct. at 1360, 4 L.Ed.2d at 1427:

"The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards.

\*  \*  \*  \*  \*  \*

When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. . . . Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; . . . his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award."

Thus a court's role is extremely circumspect in an action attacking the validity of an arbitration award under a collective bargaining agreement. The court cannot review the Arbitrator's findings of fact absent extraordinary circumstances such as fraud or gross mistake.

*See, e. g., Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968); *Electronics Corp. v. International Union of E., R. & M. W., Local 272*, 492 F.2d 1255 (1st Cir. 1974). In this case, the parties concede that this Court must accept the Arbitrator's findings of fact as correct.

The issue here is to determine whether the award "draws its essence from the collective bargaining agreement." *Enterprise Wheel, supra*, 363 U.S. at 597, 80 S.Ct. at 1361, 4 L.Ed.2d at 1428. The submission to the Arbitrator provided:

"Was the discharge of Edward Noel justified under the terms and conditions of the Collective Bargaining Agreement? If not, what shall the remedy be?"

This submission charged the Arbitrator to undertake three inquiries: first, to interpret the Agreement and determine the pertinent contractual provisions and the scope of his jurisdiction; second, to make findings of fact necessary to determine whether Mr. Noel's discharge was justified under the pertinent provisions of the Agreement; and third, if it was not justified, to fashion an appropriate remedy.

In addition to the contractual provisions quoted above, the Agreement in § 16.0 provides that "[a]ny Union Grievance involving the interpretation or application of the terms of th[e] Agreement" is subject to final and binding arbitration. It also places certain restrictions upon the power of an arbitrator in Article XVI:

"16.1 . . . [T]he Arbitrator shall have no power to add to, detract from, or modify any of the terms of this Agreement."

It is clear that in undertaking his first inquiry, the Arbitrator purported to interpret the Agreement. He construed the "antidiscrimination" provision of § 18.4 as a contractual qualification upon the Company's right to discipline employees for violation of the "no-strike" provisions of § 17.0, thus broadening the scope of issues appealable through the grievance procedure of the Agreement in this case. The Arbitrator necessarily, though implicitly, concluded that the limitation in § 17.0 that

"[e]mployees shall have the right to appeal through the Grievance Procedure of the contract only as to the question of participation [in an unauthorized strike, etc.]"

did not foreclose an employee so disciplined from asserting through the grievance procedure that the disciplinary action taken against him had violated § 18.4 of the Agreement.[1]

The Company contends that § 17.0 specifically and unambiguously gave it final and unreviewable authority to discipline employees who violated the "no-strike" provisions of the Agreement. The Company cites a number of decisions, to which we will return, which recognize that the right to discipline selectively can be of great value to an employer.

"It appears to us that the company's right to selectively discharge participants in an illegal work stoppage was intended to allow the company to deal quickly with such an emergency. The efficacy of its exercise is portrayed [here] . . .. It can be assumed that the contract provision which allowed the selective discharge of some of the participants in a walkout was the product of bargaining and that the company gave some *quid pro quo* to get it. An arbitrator should not be permitted to nullify it." *Local 342, U.A.W. v. T.R.W., Inc.*, 402 F.2d 727, 731 (6th Cir. 1968), *cert. denied*, 395 U.S. 910, 89 S.Ct. 1742, 23 L.Ed.2d 223.

---

1. In its memorandum in support of its cross-motion for summary judgment at 8 n. 4, the Company points out the Arbitrator's failure to refer anywhere in his decision to the language of § 17.0 which purported to limit the arbitrable issue to the question of a grievant's partici-pation in an unauthorized work stoppage. The Company does not contend, however, that the Arbitrator failed to consider this language in making his award in view of the fact that the issue was fully briefed by the Company in its presentation to the Arbitrator.

*See also General Foam Corp. v. District 50, U.M.W.,* 266 F.Supp. 249, 251 (M.D.Pa.1967).

I do not understand the Company to contend simply that the Arbitrator's interpretation of the Agreement was "unreasonable", since the Supreme Court's decision in *Enterprise Wheel* clearly removes that argument as a basis for vacating an arbitration award:

"Respondent's major argument seems to be that by applying correct principles of law to the interpretation of the collective bargaining agreement it can be determined that the agreement did not [provide as the arbitrator interpreted it], and that therefore the arbitrator's decision was not based upon the contract. The acceptance of this view would require courts, even under the standard arbitration clause, to review the merits of every construction of the contract. This plenary review by a court of the merits would make meaningless the provisions that the arbitrator's decision is final, for in reality it would almost never be final. . . . [T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *Id.,* 363 U.S. at 598–599, 80 S.Ct. at 1361, 4 L.Ed.2d at 1429.

Of course the foregoing language of *Enterprise Wheel* does not lend itself to conversion to a neat or precise objective test, as is amply demonstrated in the courts' case-by-case rephrasing of this standard of review in their struggle to adhere to its teachings. *See, e. g., Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1126–1128 (3d Cir. 1969) (collecting cases). *See generally* Markham, Judicial Review of an Arbitrator's Award Under Section 301(a) of the Labor Management Relations Act, 39 Tenn. L.Rev. 613, 619–631 (1972). After surveying the phraseology used by other courts, the Third Circuit in *Ludwig Honold, supra,* adopted the following restatement of *Enterprise*:

"At the very least this means that the interpretation of labor arbitrators must not be disturbed so long as they are not in 'manifest disregard' of the law, and that 'whether the arbitrators misconstrued a contract' does not open the award to judicial review.

Accordingly, we hold that a labor arbitrator's award does 'draw its essence from the collective bargaining agreement' if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention." *Id.* at 1128 (footnotes omitted).

■ In *International Union of E., R. & M. W. v. Peerless Pressed Metal Corp.,* 489 F.2d 768 (1st Cir. 1973) (hereinafter *"Peerless II"*), the First Circuit reversed a district court which had refused to enforce a labor arbitration award on the ground that the collective bargaining agreement would not permit the construction given it by the arbitrator. The First Circuit stated that the district court's view "was no longer a permissible conclusion", *id.* at 769, since in an earlier decision, *Peerless Pressed Metal Corp. v. International Union of E., R. & M. W.,* 451 F.2d 19 (1st Cir. 1971), *cert. denied,* 414 U.S. 1022, 94 S.Ct. 445, 38 L.Ed.2d 313 (hereinafter *"Peerless I"*), the Court of Appeals had ordered arbitration of the very issue of proper interpretation on the ground that the agreement *could* be interpreted as the arbitrator ultimately found. These decisions seem to instruct that, where interpretation of the scope of an arbitration clause is at issue, a court is to apply the same basic standard in an action to set aside or enforce an arbitration award as in an action to compel or enjoin arbitration. *See John Wiley & Sons v. Livingston,* 376 U.S. 543, 555, 84 S.Ct. 909, 917, 11 L.Ed.2d 898, 907 (1964). *Cf. Camden Industries Co. v. Carpenters Local Union*

*No. 1688*, 353 F.2d 178 (1st Cir. 1965).[2] The standard employed by the First Circuit in *Peerless I*, an action to enjoin arbitration, appears at 20–21:

> "It is common ground that although a collective bargaining agreement is a contract, it is to be more liberally construed than an agreement between private individuals. A court should not refuse to order arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' *United Steelworkers of America v. Warrier & Gulf Navigation Co.*, 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). This does not grant to the courts a license to inquire into the merits on the theory that they are enforcing a clause limiting arbitration to disputes requiring an interpretation of the agreement. A dispute may not be kept from the arbitrator on this ground so long as it is 'possible', even if as a court we might not think it 'reasonable', for an arbitrator to decide in favor of the party demanding arbitration without thereby, in effect, amending the plain language of the agreement. [Citations omitted.]

> \* \* \* \* \* \*

> . . . If Article II were susceptible only of a very precise and narrow definition of 'employee', the mere fact that other clauses could be read consistently with a broader definition would not suffice for arbitrability. We read certain clauses of the agreement, however, as arguably pointing positively to a different and wider definition. Under these circumstances, we deem it proper for an arbitrator to resolve the dispute.

> \* \* \* \* \* \*

> While the [argument for the broader] construction of the agreement . . . is weak, we cannot conclude that it is impossible."

This, then, is the test that we must employ in reviewing the scope of the Arbitrator's authority here. Unless the Court is forced to the conclusion that it is "impossible" to construe § 18.4 of the Agreement as a limitation upon the quoted language of § 17.0, it must uphold the Arbitrator's award.

The Company contends that the contractual language permits only one construction and that its position is amply supported by prior decisional law. There is no question that the Company's construction of the Agreement as restricting the arbitrable issue to the question of Mr. Noel's participation is eminently reasonable. Section 17.0 permits discipline of "any or all employees" who violate its terms. It then provides that employees so disciplined may appeal through the

---

**2.** I do not interpret the First Circuit's decision in *Camden Industries Co., Inc. v. Carpenters Local Union. No. 1688, supra*, to be inconsistent with my conclusion. In *Camden Industries* the First Circuit, per Judge Aldrich, concluded that where a court could not draw any firm conclusion as to whether or not a decision in favor of the party seeking arbitration would necessarily require a change in the terms of a collective bargaining agreement,

> "the matter should proceed to arbitration, where the arbitrator may determine the subsidiary facts upon which depend both the merits of the controversy and his jurisdiction to decide it."

*Id.* at 180. *Contra Strauss v. Silvercup Bakers, Inc.*, 353 F.2d 555, 558 (2d Cir. 1965) (requiring the court in these circumstances to consider evidence beyond the face of the contract and "make an effort to construe the extent of th[e] contractual duty" to arbitrate). *See also Communications Workers of America v. Southwestern Bell Tel. Co.*, 415 F.2d 35, 40 n. 10 (5th Cir. 1969).

The First Circuit noted in *Camden Industries*, however, that a subsequent finding of jurisdiction by the arbitrator would be open to review in an action to set aside or enforce his award. I view this caveat to indicate, in light of *Peerless II*, that a court is not to alter an earlier finding of arbitrability under the First Circuit's *Camden Industries* and *Peerless I* approach unless it must conclude "with positive assurance" that the arbitrator's findings of subsidiary facts (e. g., intent of parties at time of contract, labor-management practices pursuant to the agreement) preclude an interpretation of the arbitration clause to cover the controversy upon which the arbitrator based his award.

grievance process "only as to the question of participation." In contrast to the specific limitation of § 17.0, § 16.0 contains a general arbitration clause and § 18.4 speaks generally of "benefits and privileges accorded employees." In the absence of special circumstances, traditional rules of construction would counsel that the specific limitations of § 17.0 be interpreted as superceding the broad language of § 16.0, e. g., *Strauss v. Silvercup Bakeries,* 353 F.2d 555 (2d Cir. 1965), and other labor arbitrators have so concluded in interpreting similar contractual provisions. *See, e. g., MacMillan Bloedel Products, Inc.,* 55 L.A. 667 (1970) [3]; *Masonite Corp.,* 54 L.A. 633 (1970).[4]

◼ In the instant case the parties presented no evidence to the Arbitrator, beyond the text of the Agreement, to assist him in determining the correct interpretation of § 18.4 in relation to the provisions of § 17.0. *See* note 2, *supra.* Employing the First Circuit test of *Peerless I* and *II,* I cannot conclude that it is "impossible" to construe the "antidiscrimination" clause of § 18.4 as a qualification upon the Company's otherwise unreviewable discretion in taking disciplinary action for a violation of § 17.0 without thereby adding to or modifying the terms of the Agreement. In considering other decisions, I find them distinguishable.

In *Local 342, U.A.W. v. T.R.W., Inc., supra,* the Sixth Circuit ruled that a labor arbitrator had exceeded his authority in reviewing the "fundamental fairness" of disciplinary action taken pursuant to a "no-strike" clause which gave the company the right

> "to take disciplinary action, including discharge, against any employees who participate in a violation of this Section, whether such action is taken against all of the participants *or against only selected participants."* *Id.* at 728 (emphasis added).

There, however, the agreement made express reference to the concept of selective disciplinary action and, unlike the instant Agreement, does not appear to have contained an "antidiscrimination" clause analogous to § 18.4. The Court concluded that the arbitrator had looked beyond the terms of a "contract that was neither unclear nor incomplete." *Id.* at 730.

In *District 50, U.M.W. v. Chris-Craft Corp.,* 385 F.2d 946 (6th Cir. 1967), the Sixth Circuit refused to compel arbitration of the assertedly selective discharge of employees who had admittedly participated in an unauthorized work stoppage. There the "no-strike" clause provided that any such violation could result in discharge or other discipline which could

---

**3.** The limiting language of the "no-strike" clause in *MacMillan Bloedel, supra,* was in some respects stronger than § 17.0 of the instant Agreement. In that case the collective bargaining agreement in Article V § 3 referred specifically to the company's choice of discipline as nonreviewable:

> "The Company may impose, *at its sole discretion,* disciplinary measures, including discharge, in the case of any or all employees who have engaged in or encouraged any of the unauthorized acts described above. *Such disciplinary measures shall be final and binding."* *Id.* at 668 (emphasis added).

At the same time, however, the MacMillan Bloedel contract provided that "[a]ny injustice or discrimination deemed to exist as a result of the exercise of these prerogatives by Management shall be subject to" the grievance procedure.

Ruling in the alternative, the Arbitrator concluded that the "antidiscrimination" clause

did not qualify the company's sole authority to discipline under Art. V, § 3 and that, in any event, "there is a complete absence of evidence to show that other similarly situated employees were treated differently", *id.* at 670.

**4.** The collective bargaining agreement in effect in *Masonite Corp., supra,* combined both the restrictions expressed in the Victor Electric and MacMillan Bloedel contracts: an employee disciplined for violation of the "no-strike" clause could file a grievance and obtain arbitration, but

> "The arbitrator's decision shall be limited to the question of whether or not the aggrieved employee violated the provisions of this Article, and he shall have no authority to modify the disciplinary action unless it is found that the employee has not violated any of the provisions of this Article." *Id.* at 638.

not be appealed through the grievance procedure. This contract did not have a standard arbitration clause or an "antidiscrimination" clause analogous to §§ 16.0 and 18.4, respectively.

A provision in all material respects identical to § 17.0 was considered in *General Foam Corp. v. District 50, U.M.W., supra,* in an employer's action to compel arbitration of the issue of certain employees' participation prior to the imposition of any disciplinary measures. Neither the issue of selective discipline nor the existence of an "antidiscrimination" clause was raised in the opinion. The court there concluded that despite a broad arbitration clause similar to § 16.0, the "no-strike" provisions clearly limited the arbitrable issue to the question of participation.

The apparent absence of a clause analogous to § 18.4 in the contracts in the cited cases means that an arbitrator would have to look beyond the express terms of such an agreement to base an award upon a finding of discriminatory, selective discharge. *Cf. Textile Workers Union of America v. America Thread Co.,* 291 F.2d 894 (4th Cir. 1961). Similarly, the contractual language considered in these cases demonstrates that the purported limitations of § 17.0 could have been more clearly expressed to permit only one construction despite the inclusion of § 18.4 in the Agreement. *See, e. g., Masonite Corp., supra* at 638, quoted in note 4, *supra.* Section 17.0 by indirection only excludes the question of disciplinary action from the grievance procedure and thereby permits the interpretation of § 18.4 to allow such a review to the extent that discrimination is alleged. *See Communications Workers of America v. Southwestern Bell Tel. Co.,* 415 F.2d 35 (5th Cir. 1969). *Cf. Textile Workers Union of America v. American Thread Co., supra* at 899–900.

The award must, therefore, be upheld, and the Union's motion for summary judgment is granted on this issue.

■ The nature of the issues involved in this litigation does not justify the payment of attorneys' fees by the unsuccessful litigants. An award of attorneys' fees to the Union is denied. The Company's cross-motion for summary judgment is denied.

The defendant Union shall prepare an order accordingly.